T.C. Memo. 2011-230

UNITED STATES TAX COURT

THERESA M. KARAM, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14274-09.                   Filed September 26, 2011.

<u>Stephen J. Dunn</u>, for petitioner.

<u>Alicia A. Mazurek</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  The issue for decision is whether petitioner
is entitled to relief from joint and several liability under

section 6015(f)[1] for taxes reported on joint Federal income tax returns for 1999, 2000, and 2001 (years at issue).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the attached exhibits, is incorporated herein by this reference. At the time petitioner filed her petition, she resided in Michigan.

Petitioner has been married to James Karam (Dr. Karam) since 1980. Petitioner and Dr. Karam (together the Karams) have four sons: Joseph Karam, age 28; Paul Karam, age 26; Daniel Karam, age 22; and Mark Karam, age 19. Daniel and Mark Karam are undergraduates at Hope College in Holland, Michigan. Paul Karam is a graduate student at Carnegie Mellon University in Pittsburgh, Pennsylvania, and Joseph Karam is a licensed attorney living at home with the Karams.

Dr. Karam is a self-employed dentist who has owned and operated his own dental practice since 1985. Petitioner is a college graduate who in or about 2003 earned a Ph.D. in educational psychology from Wayne State University. Petitioner has been employed by the Centerline Public Schools since February

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

1981. She is currently employed as director of special services and earns an annual salary of $102,000.

The Karams filed joint Federal income tax returns from the time of their marriage through 2001. For all tax years after 2001, petitioner filed her Federal income tax returns as married filing separately.[2]

Dr. Karam hired Theodore C. Schumann, P.C., C.P.A. d.b.a. Dental Business Services, Inc. (Schumann firm), to prepare the Karams' Federal income tax returns for the years at issue. The Schumann firm prepared joint returns and delivered them to the Karams in 2002. Attached to each return was a Post-it note saying "sign here". Petitioner followed the instructions on the Post-it notes and signed the returns. Aside from the Post-it notes, petitioner had no contact with the Schumann firm. The 1999 and 2000 returns were filed on September 23, 2002, and the 2001 return was filed on October 7, 2002.

The 1999 joint return reported a total tax of $79,328, a withholding credit of $11,495, and a tax liability of $69,833. The 2000 joint return reported a total tax of $75,229, a withholding credit of $13,151, and a tax liability of $64,907. The 2001 joint return reported a total tax of $74,346, a withholding credit of $14,106, and a tax liability of $62,562.

_____

[2]Respondent stipulates that petitioner has been in compliance with the income tax laws since 2001.

The withholding credit listed on each return is an amount taken from petitioner's salary. The tax liability listed on each return is attributable to Dr. Karam's dental practice income.

Petitioner sued the Schumann firm for malpractice for failing to disclose the consequences of filing a joint tax return and obtained a judgment for $150,000. After the payment of expenses associated with the suit, petitioner was left with approximately $100,000 in net proceeds. Petitioner offered that $100,000 to respondent as part of an offer-in-compromise for her 1999, 2000, and 2001 tax liabilities. The offer-in-compromise included a $20,000 deposit. Respondent rejected the offer-in-compromise and kept the $20,000 to apply against petitioner's tax liabilities.

At the time petitioner signed the returns, she and Dr. Karam were paying a number of large expenses, including a monthly mortgage payment and private school tuition for all four of their children. Public school students in petitioner's community had scored well on tests, but it was important to petitioner that her sons attend private schools as the curricula at those schools promoted values that petitioner and her husband deemed important. The income from Dr. Karam's dental practice was used to pay the children's tuition, the mortgage, and household bills and to support Dr. Karam's aunt. Petitioner's salary was used to pay

her Ph.D. expenses, support her mother, and pay various general household expenses.

On March 18, 2009, petitioner filed Form 8857, Request for Innocent Spouse Relief, with respondent seeking innocent spouse relief under section 6015(b), (c), and (f) for 1999, 2000, and 2001. On May 18, 2009, respondent issued a notice of final determination denying petitioner's request for relief under section 6015(b), (c), and (f). Petitioner timely filed a petition with this Court on June 11, 2009, for determination of whether petitioner qualifies for relief under section 6015(f). Petitioner did not petition this Court for relief under section 6015(b) or (c). Dr. Karam was notified of the pendency of this proceeding and of his right to intervene, but chose not to intervene.

OPINION

We must decide whether respondent erred in denying petitioner relief from unpaid joint tax liabilities for the years at issue. Petitioner argues that she believed her husband would pay their tax liabilities and that it is inequitable to hold her liable when the underpayments were attributable to her husband.

The Commissioner has the discretion to relieve a spouse of joint liability if, taking into account all the facts and circumstances, it is inequitable to hold that spouse liable for any deficiency or unpaid tax. Sec. 6015(f); sec. 1.6015-4(a),

Income Tax Regs. This Court has jurisdiction to determine whether a taxpayer qualifies for relief under section 6015(f). Sec. 6015(e).

We begin with the scope of review, the standard of review, and the burden of proof. Respondent urges us to review the case for abuse of discretion. To do so, however, would be to reject our previous holdings that the scope of review and the standard of review are de novo. Porter v. Commissioner, 132 T.C. 203 (2009); Porter v. Commissioner, 130 T.C. 115 (2008). The spouse requesting relief generally bears the burden of proof. See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

The Commissioner has outlined procedures the Commissioner will follow in determining whether a requesting spouse qualifies for equitable relief under section 6015(f). See Rev. Proc. 2003-61, 2003-2 C.B. 296. The requesting spouse must meet seven threshold conditions before the Commissioner will consider a request for relief. Id. sec. 4.01, 2003-2 C.B. at 297. The parties agree that petitioner has met the preliminary requirements for relief.[3]

---

[3]One of the seven threshold conditions requires that the requesting spouse apply for relief no later than 2 years after the date of the Service's first collection activity with respect to the requesting spouse. Rev. Proc. 2003-61, sec. 4.01(3), 2003-2 C.B. 296, 297. Respondent in his opening brief argued that petitioner had failed to meet this threshold condition. On July 25, 2011, the Internal Revenue Service (IRS) issued Notice

(continued...)

I.   Safe Harbor for Section 6015(f) Relief

We now turn to whether petitioner satisfies the three conditions of a safe harbor under section 6015(f) that the Commissioner has established.  See Gonce v. Commissioner, T.C. Memo. 2007-328; Billings v. Commissioner, T.C. Memo. 2007-234; Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298.  Equitable relief will ordinarily be granted if the requesting spouse fulfills all three conditions of the safe harbor.  The first condition is that the requesting spouse be no longer married to, or be legally separated from, the nonrequesting spouse at the time she filed the request for innocent spouse relief.  Petitioner at the time she filed her innocent spouse relief request was still married to Dr. Karam.  In fact, as of the time of trial petitioner remained married to Dr. Karam.  Thus, petitioner does not satisfy this condition.  Accordingly, petitioner does not qualify under the safe harbor, and we need not consider the other two conditions.

---

³(...continued)
2011-70, 2011-32 I.R.B. 135, stating that the IRS will no longer apply the 2-year limit to file for innocent spouse relief imposed by sec. 1.6015-5(b)(1), Income Tax Regs.  Further, Notice 2011-70, supra, stated that in any case in litigation in which the IRS has denied a request for innocent spouse relief under sec. 6015(f) as untimely, the IRS will take appropriate action in the case as to the timeliness issue consistent with the position announced in the notice.  We ordered the parties to file supplemental briefs discussing the effect of Notice 2011-70, supra, on the current status of this case.  Respondent filed a supplemental brief abandoning his argument regarding the untimeliness of petitioner's request for equitable relief under sec. 6015(f).

II.  Balancing Test for Determining Whether Section 6015(f)
     Equitable Relief Would Be Appropriate

When a requesting spouse fails to satisfy the safe harbor conditions, the Commissioner may determine through a balancing test whether equitable relief is appropriate.  The Commissioner has listed factors the Commissioner considers in determining whether a taxpayer qualifies for relief.  See Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298.  The factors include whether the requesting spouse:  (1) Is separated or divorced from the nonrequesting spouse, (2) would suffer economic hardship if relief were denied, (3) had knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability, (4) received significant economic benefit from the unpaid income tax liability, (5) complied with income tax laws in years after the year at issue, (6) was abused by the nonrequesting spouse, and (7) was in poor health when signing the return or requesting relief; and whether the nonrequesting spouse had a legal obligation to pay the outstanding tax liability.  Id. sec. 4.03(2).  The list is nonexhaustive, and no single factor is determinative.  Id.  We address each of the factors in turn.

     A.   Marital Status

We first consider marital status.  This factor weighs in favor of the requesting spouse if she is separated or divorced from the nonrequesting spouse.  Id. sec. 4.03(2)(i).  As of the

time of trial, petitioner remained married to Dr. Karam.  This factor weighs against relief.

B.    Economic Hardship

The second factor is whether the requesting spouse would suffer economic hardship if relief were denied.  A denial of section 6015(f) relief imposes economic hardship if it prevents the requesting spouse from being able to pay her reasonable basic living expenses.  Butner v. Commissioner, T.C. Memo. 2007-136; sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.  Reasonable basic living expenses are based on the taxpayer's circumstances but do not include amounts needed to maintain a luxurious standard of living.  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.  Relevant circumstances include the taxpayer's age, ability to earn an income, number of dependents, and status as a dependent.  Sec. 301.6343-1(b)(4)(ii)(A), Proced. & Admin. Regs.  The amount of property available to satisfy the taxpayer's expenses is also considered.  Butner v. Commissioner, supra; sec. 301.6343-1(b)(4)(ii)(D), Proced. & Admin. Regs.

Petitioner is the director of special services for the Centerline Public Schools, where she earns an annual salary of $102,000.  Petitioner testified that she receives about $8,000 per month in gross income of which about $2,800 is withheld for taxes and another $160 is withheld for healthcare premiums.  Petitioner also pays $1,300 per month in COBRA premiums to

provide her two oldest sons with health care. The remainder of her income is used to pay for utilities, groceries, clothing, auto insurance, medical co-pays, doctor visits, and other living expenses for her children. What little money petitioner has remaining at the end of the month she sends to her children to help pay for gas and other expenses. Petitioner's husband pays the family's remaining living expenses, including the mortgage, cell phone bills, some groceries, some utilities, and the children's college tuition.

Petitioner failed to offer evidence to substantiate that her entire month salary was spent on reasonable basic living expenses. All this Court has to go on is petitioner's self-serving testimony that she has no money left at the end of the month to satisfy her tax liabilities. Even if we were to believe petitioner's testimony that she spends her entire monthly salary, we do not find that payment of petitioner's adult children's living expenses is a reasonable basic living expense.

Additionally, in 2008 petitioner received a $150,000 judgment against Theodore C. Schumann and the Schumann firm from a malpractice suit. Petitioner's net proceeds from the judgment amounted to $80,000.[4] Petitioner has failed to account for how

---

[4]Petitioner's answering brief filed with this Court suggests that the net proceeds from petitioner's lawsuit amounted to $100,000. This amount was offered to respondent in an offer-in-compromise. As part of the offer-in-compromise, petitioner
(continued...)

the remaining $80,000 from her judgment was spent or is being spent.

We agree that petitioner may not have the means to pay all the tax liabilities at once. We believe, however, that she can meet her basic living expenses while making periodic payments against her tax liabilities. We find that petitioner has the means to make monthly payments to reduce the tax liabilities and that denying her claim for relief will not impose an economic hardship on her. This factor weighs against relief.

C.  Knowledge or Reason To Know That Nonrequesting Spouse Would Not Pay Liability

A third factor focuses on whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the tax liability.

Respondent argues that it was unreasonable for petitioner to think that Dr. Karam would pay the tax liabilities when she signed the returns at issue. We agree. From the beginning of her marriage until 2001, petitioner had filed joint returns with Dr. Karam. These joint returns would generally show taxes due and owing. For instance, the Karams' 1997 return showed tax due of $48,063 and their 1998 return showed tax due of $46,664. Petitioner testified that her husband always paid their tax

---

⁴(...continued)
offered a $20,000 deposit. Respondent rejected the offer-in-compromise but kept the $20,000 deposit, leaving petitioner with $80,000 of net proceeds from the judgment.

liabilities and therefore she assumed he would do the same for the years at issue.

The Karams filed their 1999, 2000, and 2001 joint Federal income tax returns all in 2002. As a result of filing three returns in a single year, the Karams suddenly faced a very large total tax liability. The liabilities from these three returns totaled $197,352 plus interest and penalties. Given the large amount of taxes due in 2002 and petitioner's knowledge of the family finances, we find it unreasonable for her to have believed her husband would pay the liabilities.

Petitioner's testimony showed that she was very involved in the family's finances and was well aware of her husband's financial obligations and thus of his inability to pay a large tax bill. Petitioner and her husband each paid a portion of the family's expenses. Dr. Karam was responsible for paying major expenses, including the mortgage, the children's tuition, and the household bills. Moreover, Dr. Karam was helping to take care of his aunt. Petitioner's salary paid her Ph.D. expenses and certain household expenses. Petitioner also helped pay her mother's basic living expenses because her mother's income was limited and she did not qualify for State health insurance.

We have consistently found that a requesting spouse's knowledge of the couple's financial difficulties deprives the requesting spouse of reason to believe that her spouse will pay

the tax liability.  Stolkin v. Commissioner, T.C. Memo. 2008-211; Gonce v. Commissioner, T.C. Memo. 2007-328; Butner v. Commissioner, T.C. Memo. 2007-136.  Petitioner's knowledge of the family finances and the family's obligations should have put her on notice that Dr. Karam would not pay the tax liabilities.

Petitioner relies on Wilson v. Commissioner, T.C. Memo. 2010-134, in arguing that her lack of business sophistication contributed to her failure to know or have reason to know that the taxes in controversy would not be paid.  Wilson is distinguishable from the instant case.  Unlike the requesting spouse in Wilson who did not have an education beyond high school, petitioner is highly educated.  At the time petitioner signed the 1999, 2000, and 2001 returns, she had obtained an undergraduate degree and was working on a Ph.D.

We find that petitioner had reason to know at the time she signed the returns that her husband would not pay the joint tax liabilities.  This factor weighs against relief.

D.   Nonrequesting Spouse's Legal Obligation To Pay Liability

A fourth consideration is whether the nonrequesting spouse had a legal obligation to pay the tax liability.  Dr. Karam does not have a legal obligation to pay the outstanding income tax liabilities pursuant to a divorce decree or other agreement.  Therefore, respondent determined that this factor is neutral, and we have no information to find otherwise.

E.    Economic Benefit From Items Giving Rise to Liability

A fifth consideration is whether the requesting spouse received significant benefit from the unpaid income tax liability or item giving rise to the deficiency.  A significant benefit for purposes of section 6015(f) is any benefit in excess of normal support.  Sec. 1.6015-2(d), Income Tax Regs.  A significant benefit may be direct or indirect.  Id.

Petitioner sent her four children to expensive private elementary and high schools, even though public school students in her community scored well on tests.  Having her sons attend private school was important to petitioner because of the values those schools promoted.  The income from Dr. Karam's dental practice (i.e., the items which caused the tax liabilities) paid for the children's private school tuition.  Additionally, Dr. Karam's dental practice income covered all household expenses other than the groceries and clothing paid for by petitioner. Having Dr. Karam pay the household expenses allowed petitioner to use her salary to pay her Ph.D. expenses.  The facts and circumstances presented strongly suggest that petitioner received a significant benefit from the items giving rise to the income tax liabilities.  This factor also weighs against relief.

F.    Subsequent Compliance With Income Tax Laws

A sixth consideration is whether the requesting spouse made a good faith effort to comply with income tax laws in subsequent

years.  Respondent stipulates that petitioner has been in compliance with the income tax laws since 2001.  Therefore, this factors weighs in favor of relief.

G.    Abuse by Nonrequesting Spouse

Petitioner did not allege that there was any abuse when she signed the returns.  Therefore, respondent determined that this factor is neutral, and we have no information to find otherwise.

H.    Poor Health When Signing Return or Requesting Relief

Petitioner did not allege that she was in poor health when she signed the return or when she requested relief.  Therefore, respondent determined that this factor is neutral, and we have no information to find otherwise.

III. Conclusion

In summary, one factor weighs in favor of relief, four factors weigh against relief, and three factors are neutral. After weighing the testimony and evidence in this fact-intensive and nuanced case, we hold petitioner is not entitled to relief from joint and several liability for the joint income tax for each of the years at issue.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>