**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a1138n.06

**No. 11-2633**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
*Nov 05, 2012*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| THERESA KARAM, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES TAX COURT |
| COMMISSIONER OF INTERNAL REVENUE, | ) |
| | ) |
| Respondent-Appellee. | ) |
| | ) |

BEFORE: SUTTON and GRIFFIN, Circuit Judges; and WELLS, District Judge.[*]

GRIFFIN, Circuit Judge.

Theresa Karam appeals a judgment of the United States Tax Court finding her ineligible for equitable relief under § 6015(f)[1] from joint and several liability for federal income tax deficiencies on three years of joint returns she filed with her husband. The tax court denied Karam equitable relief based on its finding that she had reason to know that the taxes would not be paid when the couple filed their returns, significantly benefitted from the nonpayment, and suffered no economic hardship from being held jointly and severally liable with her husband. Finding no abuse of discretion, we affirm.

---

[*]The Honorable Lesley Wells, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code (26 U.S.C.).

I.

Petitioner Theresa Karam has been married to James Karam since 1980. Theresa is the director of special education for a public school district and has worked there since 1981. She holds a Ph.D. in educational psychology and her current gross income is about $8,000 per month. She began her doctorate program in 1997, taking classes for the next seven years until she completed her dissertation and received her doctoral degree. James is a self-employed dentist who has operated his own practice since 1985. The Karams have four adult sons, each of whom received their primary and secondary education in parochial schools. Theresa Karam regularly sends her adult children money for living expenses after she pays for utilities, groceries, clothing, healthcare premiums for the entire family, and car insurance premiums for the family's four vehicles.

The Karams have used an accountant to file joint federal income tax returns since they were married. However, in 1997, following the death of their long-time accountant, James Karam retained Theodore C. Schumann, P.C., C.P.A., doing business as Dental Business Services, Inc. (the "Schumann firm"), to take over the family's accounting and taxes. Although James provided the Schumann firm with tax documentation necessary to timely prepare their tax returns, the firm was delinquent in preparing the Karam's tax returns for the years 1998, 1999, 2000, and 2001. The Karams later discovered that the accountant assigned to their file was ill, and the firm never had another accountant prepare their returns.

In August 2002, IRS Officer Sharon Sloan demanded that the Karams file their delinquent income tax returns or face a financial records subpoena. Thereafter, the Schumann firm finally

delivered joint income tax returns for the Karams to sign. Attached to each return was a note saying "please sign." Theresa Karam alleges that she had to sign the returns as presented and was unaware that she could decline to file a joint return and instead file as "married filing separately." The Schumann firm never advised her with respect to the tax consequences of filing a joint return. She nevertheless signed each of the four returns, and the Schumann firm filed them with the IRS.

The returns for 1999, 2000, and 2001 showed balances due. Exclusive of penalties and interest, the Karams owed a total of $197,302 in unpaid income taxes for those three years. The deficiency resulted from the Karams' failure to pay estimated tax on the dental business income earned between 1999 and 2001. Shortly after the Karams filed their delinquent returns, the IRS recorded a tax lien against their real property.

In August 2006, Theresa Karam sued the Schumann firm in Michigan state court, alleging that the firm's negligence and breach of contract resulted in her joint and several liability for federal income taxes. The case was ultimately settled, with a payment of $150,000 to petitioner. After paying attorney's fees and costs, Karam offered the IRS the remaining balance of $99,186 to settle her outstanding tax liability. Pursuant to administrative procedure, Karam was required to deposit twenty percent of her offer with the IRS, which she did. However, the IRS ultimately rejected Karam's settlement offer and kept her $19,837 deposit.[2]

In November 2008, Theresa Karam submitted a Form 8857 Request for Innocent Spouse Relief to the IRS, requesting relief from joint and several liability for the tax deficiencies arising

---

[2]Karam represents that she has been using the remaining balance to finance this case.

from the joint returns for 1999, 2000, and 2001. After analyzing Karam's eligibility for relief under § 6015(b), (c), and (f), the Commissioner denied her request. Karam challenged the Commissioner's denial in the United States Tax Court, but only on the ground that she was entitled to equitable relief under § 6015(f).[3] Following a bench trial in which Theresa and James Karam both testified, the tax court issued a written opinion affirming the Commissioner. *Karam v. Comm'r*, 102 T.C.M. (CCH) 311, 2011 WL 4448937 (T.C. 2011). Karam timely appealed.

## II.

We review the tax court's decision not to award equitable relief under § 6015(f) for an abuse of discretion. *Greer v. Comm'r*, 595 F.3d 338, 344 (6th Cir. 2010). The tax court abuses its discretion when it relies on clearly erroneous findings of fact; improperly applies the law; uses an erroneous legal standard; or bases its decision on a clearly erroneous assessment of the evidence. *Id.*

Karam argues the tax court abused its discretion in denying her equitable relief under § 6015(f). The Commissioner responds that the tax court's decision in this fact-intensive case is well supported and should be affirmed. We agree with the Commissioner.

Section 6015(f) provides that the Commissioner may grant a spouse relief from joint and several liability on a joint income tax return where it is inequitable to hold the requesting spouse liable. The statute provides: "Under procedures prescribed by the Secretary, if . . . taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid

---

[3]Karam has therefore waived any claim for relief under § 6015(b) or (c).

tax or any deficiency (or any portion of either) . . . the Secretary may relieve such individual of such liability." 26 U.S.C. § 6015(f)(1). "[S]ubsection (f) does not *require* the IRS to grant relief even to an applicant who fully satisfies the criteria set out in the subsection; for it states that if those criteria are satisfied the Service *may* relieve such individual of such joint-filer liability." *Lantz v. Comm'r*, 607 F.3d 479, 485 (7th Cir. 2010) (internal quotation marks and brackets omitted).

The Commissioner has prescribed procedures applicable to requests for equitable relief under § 6015(f) in Revenue Procedure ("Rev. Proc.") 2003-61, 2003-32 I.R.B. 296. Section 4.03(2)(a) of Rev. Proc. 2003-61 details the following nonexclusive list of factors that should be considered in determining whether § 6015(f) relief is warranted: (1) marital status, (2) economic hardship that would result absent relief, (3) knowledge or reason to know of the deficiency, (4) any legal obligation of the nonrequesting spouse to pay the income tax liability pursuant to a divorce agreement, (5) whether the requesting spouse significantly benefitted from the unpaid tax liability, (6) the requesting spouse's compliance with income tax laws since the years in question, (7) spousal abuse, and (8) poor mental and physical health. *Id.* The spouse requesting equitable relief bears the burden of proof. *Greer*, 595 F.3d at 344.

In reviewing Karam's § 6015(f) claim, the tax court determined that factors (4), (7), and (8) were neutral in its analysis and factor (6) weighed in favor of relief because she has complied with federal income tax laws since 2001. *Karam*, 2011 WL 4448937 at *5-6. Neither party challenges those findings. Furthermore, the Commissioner now concedes that factor (1) is neutral because the

Karams remain married. Consequently, the parties' arguments focus on the remaining factors and an unenumerated factor that Karam claims the tax court failed to address.[4]

Starting with factor (2), an "economic hardship" exists if satisfaction of the deficiency, in whole or in part, "will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses." Treas. Reg. § 301.6343-1(b)(4)(i).[5] "The determination of a reasonable amount for basic living expenses will . . . vary according to the unique circumstances of the individual taxpayer." *Id.* The Treasury Regulations supply a variety of factors that are to be considered in evaluating a taxpayer's individual circumstances. *Id.* at § 301.6343-1(b)(4)(ii).

The tax court found that Karam could not establish economic hardship because she failed to demonstrate that her entire monthly salary was spent on reasonable basic living expenses. *Karam*, 2011 WL 4448937 at *4. First, it rejected Karam's unsubstantiated assertion that she had no money left at the end of the month to satisfy any portion of her tax liabilities. *Id.* Second, the court disagreed with Karam's legal proposition that her reasonable basic living expenses included the payment of her adult children's living expenses. *Id.* Ultimately, the tax court found that, although

---

[4]Karam's arguments under the proposed update to Rev. Proc. 2003-61 in IRS Notice 2012-8, 2012-4 I.R.B. 309, are irrelevant. The IRS issued Notice 2012-8 *after* the tax court entered its final judgment and *after* Karam filed her notice of appeal. The Notice does not instruct or suggest that the proposed update to Rev. Proc. 2003-61 be retroactively applied to a case already decided by the tax court and on appeal to a circuit court.

[5]Section 4.03(2)(a)(ii) defines economic hardship by cross-referencing § 4.02(1)(c), which in turn refers to Treas. Reg. § 301.6343-1(b)(4).

Karam "may not have the means to pay all the tax liabilities at once [,] . . . she can meet her basic living expenses while making periodic payments against her tax liabilities." *Id.*

Karam argues that this factual determination is clearly erroneous because her testimony shows that she cannot afford to pay any portion of the tax liability after paying for her reasonable basic living expenses. Her $8,000 per month gross income is reduced by: (1) $2,800 in tax witholdings; (2) $160 in health insurance premiums for a "family" policy that covers herself, her husband, and their two youngest adult children; and (3) $1,300 in health insurance premiums for her two oldest sons who are both ineligible under the other policy. Karam uses the remaining balance to pay for utilities, groceries, car insurance (which covers her adult children), medical co-pays, doctor visits, and miscellaneous living expenses for her sons. She also claims the federal tax lien contributes to an overall economic hardship.

We find no clear error in the tax court's determination on this factor. Economic hardship exists only where a taxpayer is unable to pay federal tax liabilities "in whole or in part," meaning that a taxpayer who can pay *any* portion of her liabilities after paying for reasonable basic living expenses, cannot satisfy this factor. Treas. Reg. § 301.6343-1(b)(4)(i). Here, Karam admits to spending a large portion of her monthly income on health and car insurance and living expenses for her four adult children. Nothing in the applicable procedures or regulations suggests that the payment of such expenses should be included as part of Karam's own reasonable basic living expenses. Accordingly, those funds are available, at least in part, to satisfy her outstanding tax liabilities.

Additionally, her admission that she is using the remaining $80,000 from the settlement with the Schumann firm to finance this litigation further undermines her claim for relief. Karam questionably asserts "economic hardship" while possessing a large litigation fund that she could use to make partial payments on her tax debt. The equities of the situation are not in her favor. Moreover, Karam's argument that the tax lien affects her credit rating and her ability to find different employment or sell her real property is unpersuasive. She does not explain how those concerns actually deprive her of the ability to afford her own reasonable basic living standards while paying even a portion of her delinquent taxes on her $8,000 a month salary. Karam therefore has failed to show that the tax court clearly erred or abused its discretion in finding that factor (2) weighed against relief.

Turning to factor (3), in determining whether Karam had "reason to know" her husband would not pay the three years of deficiencies, we consider her individual circumstances and whether a reasonable person in her position could be expected to know of an inability or unwillingness to pay. *Alt v. Comm'r*, 101 F. App'x 34, 41 (6th Cir. 2004) (citing *Shea v. Comm'r*, 780 F.2d 561, 566 (6th Cir. 1986)). Karam's circumstances are defined by examining her: (1) level of education, (2) any deceit or evasiveness of her husband, (3) degree of involvement in the activity generating the income tax liability, (4) involvement in business and household financial matters, (5) business or financial expertise, and (6) lavish or unusual expenditures compared with past spending levels. Rev. Proc. 2003-61 § 4.03(2)(a)(iii)(C); 2003-32 I.R.B. 296.

The tax court found Karam had reason to know that, at the time she signed the returns for 1999, 2000, and 2001, her husband would not pay their joint tax liabilities. The court explained, "[a]s a result of filing three returns in a single year, the Karams suddenly faced a very large total tax liability" of over $197,000, plus interest and penalties, an amount much greater than what they had owed in prior years. *Karam*, 2011 WL 4448937 at *4. It also found that Karam "was very involved in the family's finances and was well aware of her husband's financial obligations and thus of his inability to pay a large tax bill." *Id.* at *5. This factor weighed against relief because Karam's "knowledge of the family finances and the family's obligations should have put her on notice that [her husband] would not pay the tax liabilities." *Id.*

Karam argues that the tax court's finding is clearly erroneous. She claims there is no factual support for the conclusion that she was "very involved" in family finances, that she knew of her husband's financial obligations, or his inability to pay a $197,000 tax bill. She also notes she has no training or experience in accounting or taxes, though she does have a Ph.D.

Following our review, we conclude that the tax court did not clearly err in finding that Karam had reason to know that her husband would not pay their joint tax liabilities. The tax court reasonably rejected as not credible Karam's alleged belief that her husband would pay $197,000 in 2002. As the tax court noticed, this amount far exceeded the taxes due in prior years. Its finding that Karam was "very involved" in the family's finances is anchored in the record: she knew of, and was partially responsible for, the family's financial obligations, and she also knew that her husband was paying a large portion of their family's expenses during 1999 through 2001.

More importantly, Karam knew at the time the returns were signed that her husband would have difficulty paying. On the Form 8857, in response to the question "When any of the returns were signed, were you having financial problems (for example, bankruptcy or bills you could not pay)?" she checked the box for "Yes," stating "We had household bills we could not pay." Her response supplies a "reason to know" that her husband could not pay a tax bill in 2002 that was nearly five times larger than their usual annual bill. This conclusion is further supported by the general proposition that "a requesting spouse's knowledge of the couple's financial difficulties deprives the requesting spouse of reason to believe that her spouse will pay the tax." *Id.* (citing *Stolkin v. Comm'r*, 96 T.C.M. (CCH) 143, 2008 WL 4107826 (T.C. 2008); *Gonce v. Comm'r*, 94 T.C.M. (CCH) 433, 2007 WL 3225063 (T.C. 2007); *Butner v. Comm'r*, 93 T.C.M. (CCH) 1290, 2007 WL 1574951 (T.C. 2007).

We further note that, although Karam stated in an attachment to her Form 8857, and in her tax court petition, that her husband had assured her that he would pay the entire liability for the years in question, during the trial, neither Karam nor her husband testified to that assurance. The absence of proof on this matter further undercuts Karam's "reason to know" argument. Accordingly, the tax court did not err in finding that factor (3) does not favor relief.

The final disputed factor asks whether Karam received a "significant benefit" from the unpaid income tax liability. "A significant benefit is any benefit in excess of normal support." Treas. Reg. § 1.6015-2(d).[6] The benefit may be direct or indirect. *Id.* "Normal support" is

---

[6]Section 4.03(2)(a)(v) defines significant benefit by referencing Treas. Reg. § 1.6015-2(d).

- 10 -

determined by the circumstances of the taxpayer. *Thomassen v. Comm'r*, 101 T.C.M. (CCH) 1397, 2011 WL 1518446, *13 (T.C. 2011). In determining whether Karam significantly benefitted from the unpaid tax liabilities, we consider whether the couple was able to make expenditures in the taxable years in question that they otherwise would not have been able to make. *See Levy v. Comm'r*, 89 T.C.M. (CCH) 1101, 2005 WL 950116, *14 (T.C. 2005)

The tax court found that Karam received at least two significant benefits from not paying federal income taxes. First, it determined that since her husband's dental practice covered "all household expenses other than the groceries and clothing paid for by [Karam]," that "allowed [her] to use her salary to pay her Ph.D. expenses." *Karam*, 2011 WL 4448937 at *5. Second, it found that the untaxed income from the dental business paid for their children's private school tuition at the primary and secondary levels. *Id.*

The parties exhaustively dispute whether Karam received a significant benefit by her husband paying for private school for their children. In this regard, the tax court recently observed that "the payment of private elementary or secondary school expenses of the requesting spouse's children generally has not been held to constitute a significant benefit . . . ." *Thomassen*, 2011 WL 1518446 at *14 (citing *Marzullo v. Comm'r*, 73 T.C.M. (CCH) 2993, 1997 WL 311838 (T.C. 1997); *Friedman v. Comm'r*, 70 T.C.M. (CCH) 1491, 1995 WL 710947 (T.C. 1995); *Foley v. Comm'r*, 69 T.C.M. (CCH) 1661, 1995 WL 15090 (T.C. 1995)). The Karams testified at trial that sending their children to parochial school is normal in their household because they attended such schools and value the moral education received at such institutions. Given the Karam's testimony, and the tax

court's position on the issue, we agree with Karam that her husband's payment of private school tuition should not be considered a "significant benefit" beyond "normal support." Our agreement on this point does not change the conclusion that, as a whole, factor (5) does not favor relief.

Indeed, Karam fails to contest the tax court's finding that she significantly benefitted from receiving her Ph.D. *See Thaddeus–X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (en banc) (appellant waives issues not contained in the opening brief). Although the payment of private school tuition for her children can reasonably be considered normal support under the circumstances, her receipt of a Ph.D. is not; it was a "significant benefit" obtained, at least in part, from the support provided by the untaxed income from her husband's dental practice. By having her husband pay living expenses, she could use her salary to pay her Ph.D. tuition and expenses in full, which she did. Moreover, shortly after obtaining her doctorate, she received a new supervisory position with her employer and a modest increase in compensation. Accordingly, factor (5) does not favor relief.

Karam next claims the tax court erred by not considering her argument that she "didn't know" the consequences of filing a joint tax return. The tax court did not specifically address this argument in its written opinion. However, the court "considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit." *Karam*, 2011 WL 4448937 at *6. The tax court—for good reason—likely rejected Karam's "I didn't know" argument as meritless. She has not offered any statutory or regulatory authority or any decisional law supporting her position that a requesting spouse's subjective understanding of the consequences of filing jointly is a relevant consideration. This is not surprising given the maxim "ignorance of the

law is no excuse." *Beatty v. Comm'r*, 93 T.C.M. (CCH) 1422, 2007 WL 1837128, *11 (T.C. 2007). Consequently, there is no legitimate basis for including Karam's alleged ignorance of the consequences of joint filing in the § 6015(f) analysis.

In sum, factors (1), (4), (7), and (8) are neutral, factor (6) weighs in favor of relief, and factors (2), (3), and (5) weigh against relief. Moreover, we agree with the tax court that the three factors against relief outweigh the sole factor in favor of relief. After carefully considering all the relevant facts and circumstances, we find neither a clear error in the tax court's findings of fact nor an abuse of discretion in its decision.

III.

For the foregoing reasons, we affirm.