**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

.

T.C. Summary Opinion 2014-96

UNITED STATES TAX COURT

KATHRYN D. EHRMANN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1919-13S.                          Filed September 23, 2014.

Kathryn D. Ehrmann, pro se.

<u>Christina L. Cook</u> and <u>John Schmittdiel</u>, for respondent.

SUMMARY OPINION

MARVEL, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner seeks review of respondent's determination denying her relief from joint and several liability for Federal income tax for 2010 pursuant to section 6015(f).

## Background

Some of the facts have been stipulated and are so found. The stipulated facts and the facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioner resided in Minnesota when she filed her petition.

Petitioner is a senior managing director at CB Richard Ellis in its global corporate services division. She has a bachelor's degree and a master's degree in business administration. In 2000 petitioner purchased a residence in Wayzata, Minnesota (Wayzata residence).

## I. Marriage to Peter F. Pacioni

In 2008 petitioner married Peter F. Pacioni. Mr. Pacioni worked in the sales and construction industry as a manufacturer's representative and owned a business called Pacioni Sales.

During their marriage petitioner and Mr. Pacioni moved several times on account of petitioner's career. In 2008 or 2009 petitioner purchased a residence in the city of Hilton Head Island, South Carolina (Hilton Head residence), after CB Richard Ellis transferred her to Charlotte, North Carolina, as the senior strategist of its Bank of America strategy team. Petitioner acquired the Hilton Head residence using nonmarital funds, and Mr. Pacioni's name is not associated with any encumbrances against the property. Petitioner and Mr. Pacioni lived at the Hilton Head residence from September 2009 through February 2010. Petitioner did not sell the Hilton Head residence after she moved in February 2010 because she had substantial negative equity in the property and did not wish to sell it at a loss.

In or around February 2010 CB Richard Ellis transferred petitioner to Chicago, Illinois, as the alliance director of its BP North America team. Petitioner and Mr. Pacioni rented a townhouse in Oakbrook, Illinois (Chicago townhouse), in which they resided from February 2010 through April 2011. Sometime between April and September 2011 petitioner and Mr. Pacioni moved back to Minnesota.

In addition to these residences petitioner and Mr. Pacioni also maintained an apartment near Chicago between March 2009 and April 2012 which Mr. Pacioni used for his business.

Throughout their marriage petitioner was the primary income producer. Before February 2011 petitioner and Mr. Pacioni kept separate bank accounts. Mr. Pacioni maintained a bank account with U.S. Bank. Petitioner did not have access to Mr. Pacioni's U.S. Bank account and was generally unaware of his income and expenditures during this period. In February 2011 the Internal Revenue Service (IRS) levied on Mr. Pacioni's U.S. Bank account. After the levy and pursuant to Mr. Pacioni's request, petitioner opened a Wells Fargo bank account in her name for his use. Petitioner had full access to the Wells Fargo account.

II.     Petitioner's Involvement With Mr. Pacioni's Business

Throughout the marriage petitioner was actively involved with Pacioni Sales and helped Mr. Pacioni secure clients. In 2009 petitioner traveled to Italy with Mr. Pacioni for an introductory meeting at the headquarters of Brai, a prospective client, where she gave a presentation. Petitioner was responsible for preparing a national sales agreement between Pacioni Sales and Brai and for drafting national distributor contracts pursuant to the sales agreement. In 2010 and 2011 petitioner created advertisements for Brai and helped create a Pacioni Sales/Brai Web site. In 2011 petitioner also attended national trade shows as a Pacioni Sales representative. Mr. Pacioni gave petitioner access to his business

email and allowed her to prepare invoices for certain clients. Petitioner knew that Mr. Pacioni was not making estimated tax payments with respect to his income from Pacioni Sales.

III.    Federal Income Tax Matters

Before their marriage petitioner learned that Mr. Pacioni had outstanding Federal tax liabilities for 2005 and some earlier years, totaling approximately $26,500. Petitioner paid these liabilities using her personal funds.

Petitioner and Mr. Pacioni filed joint Federal income tax returns for 2008, 2009, and 2010. For all three years Mr. Pacioni failed to make estimated tax payments. Mr. Pacioni also failed to pay his share of the 2008 joint income tax liability, resulting in a levy on petitioner's wages. Petitioner paid the outstanding 2008 tax liability.

In late 2010 petitioner learned that Mr. Pacioni had failed to file tax returns for 2006 and 2007. In early 2011 Mr. Pacioni worked with petitioner's tax return preparer, Ryan Carruth, to file his 2006 and 2007 returns and to enter into an installment agreement with the IRS.

In August 2011 the IRS issued to petitioner and Mr. Pacioni a Notice CP-2000 proposing an increase in income tax of $8,810 for 2009 and penalties and interest of $2,359, totaling $11,169. Mr. Pacioni hid this notice from petitioner.

For 2010 Mr. Carruth prepared an analysis comparing petitioner's and Mr. Pacioni's income tax liabilities calculated using joint filing status and married filing separately filing status. In 2010 petitioner earned wages of $239,446, and Mr. Pacioni had net business income of $77,296. According to Mr. Carruth's analysis, if petitioner had filed a married filing separately return, her total Federal income tax liability would have been $57,891. After accounting for her withholdings and prior tax payments petitioner would have received a refund of $646. Mr. Pacioni's Federal income tax liability calculated using a filing status of married filing separately would have been $19,294, resulting in an unpaid income tax liability of $18,894. By filing jointly petitioner and Mr. Pacioni could reduce their total Federal income tax liability by $5,409.

At Mr. Pacioni's request petitioner and Mr. Pacioni filed a joint Federal income tax return for 2010. At that time petitioner was not aware of the proposed additional income tax liability for 2009 but was aware of Mr. Pacioni's nonfiling and nonpayment history. Petitioner signed the 2010 joint return on September 2, 2011.

IV.  Petitioner's Divorce

On October 10, 2011, petitioner learned that Mr. Pacioni was having an extramarital affair. On October 15, 2011, petitioner was served with divorce

papers from Mr. Pacioni. Petitioner believes that Mr. Pacioni had already planned to leave her when he asked her to file a joint return for 2010.

On July 12, 2012, the Hennepin County District Court entered a divorce decree dissolving petitioner and Mr. Pacioni's marriage. With respect to petitioner and Mr. Pacioni's Federal income tax liabilities for 2009 and 2010, the divorce decree provided as follows:

> The outstanding tax liability due for 2009 is ($11,169) as determined by the IRS and is due immediately. The outstanding tax liability due for 2010 is ($10,675) as determined by the IRS and is past due as of February 28, 2012. The parties agree to each make a $10,500 payment towards the outstanding taxes, with the 2010 liability being paid first. Wife paid $10,500 directly to the IRS for the 2010 liability and provided proof of payment to Husband.[2] Husband has not yet made his $10,500 payment, which shall be applied to the 2009 tax liability.

It further provided:

> Any income taxes owed now or determined to be owed in the future by either party to the state or federal government including interest, deficiencies and penalties for the years 2008, 2009, 2010 or 2011 shall be the sole responsibility of the party to whom the tax is attributable to as determined by the IRS or State in which it was incurred.

The divorce decree also awarded petitioner the Wayzata and Hilton Head residences and the following vehicles, all of which were unencumbered: a 2006

_____

[2]Petitioner made the $10,500 payment toward the 2010 tax liability on March 12, 2012.

Mercedes-Benz R350, a 2005 Lexus IS300, a 2004 Lexus SC430, and a 2004 Lexus RX300.  With the exception of the 2006 Mercedes-Benz,[3] all of the vehicles were nonmarital property that petitioner owned before the marriage.

V.    Petitioner's Request for Relief

On October 21, 2011, petitioner submitted to the IRS a Form 8857, Request for Innocent Spouse Relief, seeking relief from joint and several liability for 2008, 2009, and 2010.  In her Form 8857 petitioner reported annual wages of $205,000 and an estimated discretionary bonus of nearly $100,000.[4]  Petitioner reported monthly mortgage expenses of $2,933, food expenses of $1,650, and car expenses of $1,411.

Petitioner's adult children live with her rent free.  Petitioner also gave the children two of her cars--the 2006 Mercedes-Benz and the 2005 Lexus.  Petitioner currently drives a 2009 Mercedes-Benz.

---

[3]In 2008 Mr. Pacioni gave petitioner the 2006 Mercedes-Benz in return for her payment of his 2005 tax liability.

[4]In the divorce proceedings before the Hennepin County District Court petitioner submitted an affidavit dated January 6, 2012, representing:  that her base salary at CB Richard Ellis is $199,999; that her average discretionary bonus for the past four years had been $44,617.50; that she had received a one-time additional bonus of $138,983 in 2011; and that she had received commissions totaling $291,315 for 2008, 2009, and 2010.

Respondent granted petitioner's request for relief for 2009.[5]  In a final determination dated November 21, 2012, respondent denied petitioner's request for relief for 2010.  Petitioner seeks a refund of the $10,500 payment that she made toward the 2010 tax liability.

## Discussion

Generally, married taxpayers who file a joint Federal income tax return are jointly and severally liable for the tax reported or reportable on the return.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000).  Section 6015, however, allows a spouse to obtain relief from joint and several liability in certain circumstances.  Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and several liability under subsection (b) (dealing with relief from liability for an understatement of tax with respect to a joint return).  Section 6015(a)(2) provides that an eligible spouse may elect to limit that spouse's liability for any deficiency with respect to a joint return under subsection (c) (dealing with relief from joint and several liability for taxpayers who are no longer married or who are legally separated or no longer living

---

[5]The record does not establish whether or how petitioner's request for relief for 2008 was resolved.

together). If a taxpayer does not qualify for relief under either subsection (b) or (c), the taxpayer may seek equitable relief under subsection (f).

This case does not involve an understatement of tax or a deficiency, and petitioner does not argue that she is entitled to relief under section 6015(b) or (c). We therefore address whether petitioner is entitled to relief under section 6015(f).

I.    The Standard and Scope of Review

In determining whether a taxpayer is entitled to equitable relief under section 6015(f), we apply a de novo standard and scope of review. Porter v. Commissioner, 132 T.C. 203, 210 (2009). Petitioner bears the burden of proving that she is entitled to relief under section 6015(f). See id.; see also Rule 142(a)(1).

The Commissioner has prescribed guidelines in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296, for determining whether a requesting spouse qualifies for relief under section 6015(f). This Court considers those guidelines, but is not bound by them, in evaluating the facts and circumstances of a case. See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210.

II.    Rev. Proc. 2013-34:  Threshold Conditions

Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400, sets forth seven threshold conditions that a requesting spouse must satisfy to be eligible for relief

under section 6015(f): (1) the requesting spouse filed a joint Federal income tax return for the tax year or years for which relief is sought; (2) the requesting spouse does not qualify for relief under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) the liability from which relief is sought is attributable to an item of the nonrequesting spouse. Respondent does not argue that petitioner has failed to satisfy any of the seven threshold requirements, and we deem this issue conceded. See Schneider v. Commissioner, T.C. Memo. 1992-96, 63 T.C.M. (CCH) 2100, 2102 (1992); Seibly v. Commissioner, T.C. Memo. 1991-125, 61 T.C.M. (CCH) 2201, 2202 (1991).

III.    Rev. Proc. 2013-34:  Equitable Factors

If a requesting spouse satisfies the threshold conditions of Rev. Proc. 2013-34, sec. 4.01, the Commissioner considers whether the requesting spouse is entitled to a streamlined determination of equitable relief under section 6015(f) pursuant to Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400. If a requesting spouse is not entitled to a streamlined determination because the requesting spouse

does not satisfy all the elements in Rev. Proc. 2013-34, sec. 4.02,[6] the requesting spouse's request for relief may be considered using the equitable relief factors in Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400.

Petitioner does not argue that she satisfies the requirements for a streamlined determination under Rev. Proc. 2013-34, sec. 4.02. Instead, petitioner argues for relief under the equitable relief factors in Rev. Proc. 2013-34, sec. 4.03. Respondent argues that petitioner does not qualify for relief.

Under Rev. Proc. 2013-34, sec. 4.03, equitable relief under section 6015(f) may be granted if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse responsible for all or part of the liability. In making the decision, the Commissioner weighs a number of factors, including, but not limited to:

> (a) Marital status. Whether the requesting spouse is no longer married to the nonrequesting spouse as of the date the Service makes its determination. * * *

---

[6]The elements required for making a streamlined determination are: (1) on the date of the request for relief, the requesting spouse is no longer married to, or is legally separated from, the nonrequesting spouse; (2) on the date the return was filed or the date the requesting spouse reasonably believed the return was filed, the requesting spouse did not know, and had no reason to know, that the nonrequesting spouse would not pay the tax liability; and (3) the requesting spouse will suffer economic hardship if the Commissioner does not grant relief. Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. 397, 400.

(b) Economic hardship.  Whether the requesting spouse will suffer economic hardship if relief is not granted. * * *

(c) Knowledge or reason to know.  * * * In the case of an income tax liability that was properly reported but not paid, whether, as of the date the return was filed or the date the requesting spouse reasonably believed the return was filed, the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay the tax liability at that time or within a reasonable period of time after the filing of the return. * * *

(d) Legal obligation.  Whether the requesting spouse or the nonrequesting spouse has a legal obligation to pay the outstanding Federal income tax liability. * * *

(e) Significant benefit.  Whether the requesting spouse significantly benefitted from the unpaid income tax liability or understatement. * * *

(f) Compliance with income tax laws.  Whether the requesting spouse has made a good faith effort to comply with the income tax laws in the taxable years following the taxable year or years to which the request for relief relates. * * *

(g) Mental or physical health.  Whether the requesting spouse was in poor physical or mental health. * * *

Id. sec. 4.03(2), 2013-43 I.R.B. at 400-403.  No single factor is determinative.  Id. at 400.

Several of these factors are not in dispute.  First, the parties agree that petitioner is now divorced and that the first factor, marital status, weighs in favor of relief.  Second, the parties agree that petitioner has been in compliance with

income tax laws and that this factor also weighs in favor of relief. Third, the parties agree that petitioner has not claimed any mental or physical health problems and that this factor is neutral. Finally, the parties agree that petitioner has not alleged any abuse or financial control by the nonrequesting spouse and that this factor is also neutral.

We address each disputed factor below in turn.

A.     Economic Hardship[7]

For purposes of this factor, an economic hardship exists if satisfaction of the tax liability, in whole or in part, will cause the requesting spouse to be unable to pay reasonable basic living expenses. Id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401. The facts and circumstances considered in determining whether the requesting spouse will suffer economic hardship include: (1) the requesting spouse's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, and current tax payments; and (3) any extraordinary circumstances such as special education expenses, a medical catastrophe, or a natural disaster. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs. In addition, consideration is

---

[7]Although both parties agreed in their pretrial memoranda that the economic hardship factor was neutral, petitioner claimed economic hardship at trial. We therefore consider this factor to be in dispute and address it accordingly.

given to the requesting spouse's current income and expenses and the requesting spouse's assets. Rev. Proc. 2013-34, sec. 4.03(2)(b). This factor weighs in favor of relief where the requesting spouse would suffer economic hardship if relief is denied and is neutral where the requesting spouse would not suffer economic hardship if relief is denied. Id.

Petitioner has failed to establish that she would suffer economic hardship if relief were denied. First, petitioner seeks a refund of money that has already been paid. Thus, her current financial circumstances will not be adversely affected if relief is denied. See, e.g., McKnight v. Commissioner, T.C. Memo. 2006-155. Second, petitioner earns significant income from her position as a senior managing director at CB Richard Ellis.[8] Third, petitioner owns substantial assets, including the Wayzata and Hilton Head residences and a number of luxury vehicles. Fourth, although petitioner has no dependents, her expenses include expenses paid to support her adult children. See, e.g., Karam v. Commissioner, T.C. Memo. 2011-230, aff'd, 504 Fed. Appx. 416 (6th Cir. 2012).

---

[8]On her Form 8857 petitioner estimated that her 2011 salary and bonus would total over $300,000. In her affidavit filed with the Hennepin County District Court, petitioner disclosed that she earned nearly $340,000 in salary and bonuses for 2011. Moreover, nothing in the record suggests that petitioner's earning potential has declined since then.

Petitioner has failed to prove that a failure to grant her section 6015(f) relief would cause her economic hardship. This factor is neutral.

B. Legal Obligation

For purposes of this factor, a legal obligation is an obligation arising from a divorce decree or other legally binding agreement. Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402. This factor weighs in favor of relief if the nonrequesting spouse has the sole legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement and weighs against relief if the requesting spouse has the sole legal obligation. Id. This factor is neutral if both spouses have a legal obligation to pay pursuant to a divorce decree or agreement or if the divorce decree or agreement is silent as to any obligation to pay the outstanding income tax liability. Id.

Respondent argues that this factor weighs against relief because the divorce decree required petitioner to pay $10,500 toward the 2010 tax liability. We disagree.

The divorce decree provides that "[a]ny income taxes owed now * * * by either party * * * for the years 2008, 2009, 2010 or 2011 shall be the sole responsibility of the party to whom the tax is attributable to as determined by the IRS." (Emphasis added.) The divorce decree therefore assigns to the IRS the

responsibility for determining each party's Federal income tax for 2008 through 2011. This factor is neutral.

### C. Significant Benefit

For purposes of this factor, a significant benefit is any benefit in excess of normal support. Rev. Proc. 2013-34, sec. 4.03(2)(e). Normal support is measured by the circumstances of the particular parties. Porter v. Commissioner, 132 T.C. at 212. This factor weighs against relief if the requesting spouse enjoyed the benefits of a lavish lifestyle, e.g., owning luxury assets and taking expensive vacations, and weighs in favor of relief if the nonrequesting spouse significantly benefited from the unpaid tax and the requesting spouse had little or no benefit or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment. Rev. Proc. 2013-34, sec. 4.03(2)(e).

The record establishes that Mr. Pacioni alone benefited by filing a joint return for 2010. Mr. Carruth's comparative analysis showed that by filing jointly, petitioner forfeited a $646 refund, while Mr. Pacioni's share of their total tax liability was reduced by $5,409. In addition, petitioner credibly testified that she and Mr. Pacioni maintained separate bank accounts. Thus, petitioner received no benefit from Mr. Pacioni's nonpayment of the 2010 tax liability.

Respondent argues that this factor weighs against relief because petitioner lived a lavish lifestyle during the marriage. Respondent alleges that petitioner owned multiple homes and that she paid for friends and family to vacation at the Hilton Head residence.[9] We disagree.

Petitioner and Mr. Pacioni had a number of residences throughout their marriage because of petitioner's work obligations and because of Mr. Pacioni's business needs. Respondent has not introduced any evidence proving a connection between the unpaid tax and these residences. Petitioner purchased the Wayzata residence using nonmarital funds many years before her marriage to Mr. Pacioni. Petitioner purchased the Hilton Head residence before 2010 using nonmarital funds. Petitioner and Mr. Pacioni terminated their Chicago townhouse lease after they returned to Minnesota. Petitioner and Mr. Pacioni kept separate bank accounts, and the record does not reveal whether or to what extent Mr. Pacioni paid any of the rent due under the Chicago townhouse lease. We also find no credible evidence in the record that petitioner paid for friends or family to vacation at the Hilton Head residence.

This factor weighs in favor of relief.

---

[9]The record is devoid of any evidence that petitioner paid for friends or family to vacation at the Hilton Head residence.

D.    Knowledge or Reason To Know

This factor examines whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not or could not pay a reported but unpaid tax liability.  Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii), 2013-43 I.R.B. at 401. In determining whether the requesting spouse knew or had reason to know that the requesting spouse would not or could not pay, the following facts and circumstances are considered:  (1) the requesting spouse's level of education; (2) the requesting spouse's degree of involvement in the activity generating the income tax liability; (3) the requesting spouse's involvement in business or household financial matters; (4) the requesting spouse's business or financial expertise; (5) any deceit or evasiveness of the nonrequesting spouse; and (6) any lavish or unusual expenditures compared with past spending levels.  Id. sec. 4.03(2)(c)(iii), 2013-43 I.R.B. at 402.

This factor weighs in favor of relief if the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return and weighs against relief if the requesting spouse's belief that the nonrequesting spouse would pay was not reasonable.  Id. sec. 4.03(2)(c)(ii).  This factor generally weighs against relief where the requesting spouse knew of the nonrequesting

spouse's prior bankruptcies, financial difficulties, or other problems with the IRS or other creditors.  Id.

Respondent argues that this factor weighs against relief because petitioner was aware of Mr. Pacioni's long history of noncompliance with tax laws when she signed the 2010 return.  Petitioner argues that had she known about Mr. Pacioni's affair and his alleged plan to divorce her, she would never have agreed to expose herself to the tax liability arising from his business no matter how great the tax savings.  We agree with respondent.

Even if we were to credit petitioner's assertion that she would not have filed a joint return for 2010 had she known of the affair and Mr. Pacioni's alleged divorce plans, the knowledge factor focuses on the requesting spouse's expectation of payment by the nonrequesting spouse.  At the time petitioner signed the 2010 return, she knew that Mr. Pacioni had failed to timely pay his individual income tax liabilities for 2005, 2006, and 2007.  Petitioner also knew that Mr. Pacioni had failed to pay his portion of their 2008 joint tax liability, resulting in a levy on her wages.  Petitioner filed a joint 2010 return with Mr. Pacioni with full knowledge of his nonfiling and nonpayment history.

Petitioner is a highly educated individual and an experienced business professional.  In addition, she was the primary income producer of the household

and had significant influence on household financial matters. Moreover, petitioner was actively involved with Pacioni Sales and knew from her involvement that Mr. Pacioni had not made any estimated tax payments for 2010 as well as for 2008 and 2009. In the light of the above facts and circumstances, we find petitioner's claimed belief that Mr. Pacioni would pay the 2010 tax liability, even if credible, was not reasonable. This factor weighs heavily against relief.

IV.    Conclusion

In summary, three of the eight factors weigh in favor of relief, one factor weighs against relief, and the remaining factors are neutral. In section 6015(f) cases, however, we do not simply count factors. We evaluate all of the relevant facts and circumstances to reach a conclusion. See Pullins v. Commissioner, 136 T.C. at 448; Rev. Proc. 2013-34, secs. 3.05, 4.03(2), 2013-43 I.R.B. at 398, 400.

Some of the most compelling facts in our analysis are the findings that: (1) petitioner knew of Mr. Pacioni's long history of tax noncompliance dating back to 2005 and earlier when she agreed to file jointly for 2010; (2) petitioner was actively involved with Mr. Pacioni's business activities, which generated the unpaid income tax liability; (3) petitioner knew that Mr. Pacioni had failed to make estimated tax payments for 2010 and prior years; (4) petitioner exercised

considerable control over the household finances and decisionmaking; and (5) petitioner would not suffer economic hardship if relief were denied.

Taking into account the foregoing, and considering all the facts and circumstances, we find that petitioner has failed to persuade us that the equities weigh in her favor. Accordingly, we conclude that petitioner is not entitled to relief from joint and several liability under section 6015(f) for 2010.

We have considered the parties' remaining arguments for results contrary to those discussed herein, and to the extent not discussed above, we conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.