T.C. Memo. 2016-66

UNITED STATES TAX COURT

LARRY O. AROBO AND SLETTA HUGHES AROBO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 29981-12.                    Filed April 14, 2016.

<u>Glen E. Frost</u>, <u>Michael Y. Goldberg</u>, and <u>Jessica F. Marine</u>, for petitioner
Larry O. Arobo.

<u>John B. Snyder, III</u>, for petitioner Sletta Hughes Arobo.

<u>Nancy M. Gilmore</u> and <u>David A. Indek</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>: Respondent (Internal Revenue Service or IRS)
determined deficiencies, additions to tax and penalties against petitioners, husband
and wife, for 2004, 2005, 2006, and 2007 (years involved), as follows:

[*2]

| | | Additions to tax/penalties | |
| | | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6662(a) |
| 2004 | $168,039 | $40,625 | $33,608 |
| 2005 | 224,193 | 53,064 | 44,839 |
| 2006 | 186,864 | 42,565 | 37,373 |
| 2007 | 67,510 | 11,880 | 13,502 |

Petitioners filed a petition for redetermination in this Court. The parties reached a settlement before trial and filed a stipulation of settled issues, resolving all issues except whether Sletta Hughes Arobo is entitled to relief from joint and several liability under section 6015(b) and (f) for each year involved. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the years involved. All Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

## FINDINGS OF FACT

Some of the facts involving the remaining issue presented in this case are stipulated and are so found.

Petitioners resided in Maryland at the time they filed their petition. Their marriage has seen its "ups and downs". Petitioners briefly separated; at an undisclosed date in 2004 they reconciled and resumed living together. At all relevant times, Larry O. Arobo was the family's primary financial provider.

[*3]   Mrs. Arobo holds an associate's degree in merchandising but has no business experience.  She was employed by Public School Employees' Child Development Program in 2004 and 2005; Helping Hands Enrichment in 2004; and Howard County Public Schools (HCPS) in 2005, 2006, and 2007.  For HCPS, she worked as a professional instructional assistant in an alternative educational program for at-risk children who struggled with poor attendance, low grades, and similar issues.  She earned $26,665 in 2004, $15,916 in 2005, $16,490 in 2006, and $21,549 in 2007.  Mrs. Arobo has never taken an accounting course, nor does she have any accounting experience.  Her employment has always been in the education field.  Mrs. Arobo's only other taxable income was interest income of $19, $13, and $21 for 2004, 2005, and 2007, respectively.

Mr. Arobo was the sole owner of Capital Markets, LLC, a mortgage origination company during the years involved.  The company had numerous bank accounts.  It ceased doing business in 2008.  Mrs. Arobo was not involved in the operation of the company.

During the years involved Mrs. Arobo had her own checking and savings accounts; Mr. Arobo had his own checking account.  In addition, petitioners had two joint bank accounts.  Mr. Arobo regularly borrowed money from Mrs. Arobo to pay those of his company's vendors who would do business only in cash.  Mrs.

**[*4]** Arobo obtained the cash from her separate bank accounts. Mr. Arobo repaid his wife by check drawn either on one of his company's accounts or on his individual account.

Petitioners jointly own the marital home, which Mrs. Arobo inherited from her parents. The house was subject to a mortgage at the time of the inheritance. Petitioners refinanced the house in 2004 and took out a second mortgage in 2007. The monthly mortgage payment on the house from 2004 to the present ranged from $1,400 to $1,800. The mortgage on the house presently is in foreclosure. Mr. Arobo drives a 1999 Mercedes vehicle, and Mrs. Arobo drives a 2000 BMW.

Petitioners have two daughters. During the years involved the elder daughter attended college. Aside from spending money while attending college, petitioners did not provide that daughter with financial support. Petitioners' youngest daughter attended public school.

Mrs. Arobo paid the household bills. Mr. Arobo regularly gave Mrs. Arobo checks drawn on his individual account or on one of the company's accounts to pay household expenses and/or the mortgage.

Petitioners' Federal income tax return for each year involved was filed late. Petitioners' income tax return for 2004 was filed on January 19, 2010. The IRS commenced an audit of that return in October 2010. Petitioners filed their 2005

[*5] income tax return on February 25, 2011, and their 2006 and 2007 income tax returns on March 2, 2011, while the 2004 return was under audit, through the IRS examining agent. Mr. Arobo was responsible for the preparation and filing of petitioners' income tax returns. Mrs. Arobo did not review the returns; rather, she "entrusted her husband and just signed them". She testified that she learned that Mr. Arobo had failed to file their 2004, 2005, 2006, and 2007 tax returns only when they were contacted by the IRS.

The 2004 and 2005 income tax returns each reported on the first page, on line 12, a business loss and negative adjusted gross income. The 2006 and 2007 income tax returns reported adjusted gross income of $52,163 and $32,049, respectively; no business income or loss was reported on, and no Schedule C, Profit or Loss From Business, was attached to, either the 2006 return or the 2007 tax return.[1] Each year's tax return reflected a tax overpayment.

The IRS examining agent expanded his audit of petitioners' 2004 tax return to include petitioners' 2005, 2006, and 2007 tax returns. The agent reviewed the

---

[1]Petitioners attached Schedules C-EZ, Net Profit From Business, to their 2006 and 2007 tax returns regarding Primrose Title/Settlement Services, a notary services company that Mr. Arobo owned. These Schedules C-EZ reported no gross receipts or expenses.

**[*6]** Schedules C attached to petitioners' 2004 and 2005 income tax returns. The 2004 and 2005 Schedules C reported the following:

| Year | Gross receipts | Total expenses | Net loss |
|------|----------------|----------------|----------|
| 2004 | $492,708 | $552,732 | $58,301 |
| 2005 | 508,431 | 621,238 | 125,751 |

The IRS agent doubted the correctness of the amounts of income reported on the returns. Believing the amounts of income reported to be understated, the agent reconstructed Capital Markets' gross receipts using the bank deposits method. The agent determined that petitioners underreported Capital Markets' gross receipts, as well as petitioners' dividend income, as follows:

| Year | Unreported gross receipts | Unreported dividend income |
|------|---------------------------|----------------------------|
| 2004 | $411,624 | -0- |
| 2005 | 443,216 | -0- |
| 2006 | 471,460 | $46,030 |
| 2007 | 172,850 | 38,400 |

Petitioners failed to substantiate their reported business expenses. Therefore, the IRS disallowed deductions for all these expenses.

On September 14, 2012, the IRS issued petitioners a notice of deficiency for the years involved. On December 12, 2012, petitioners filed a petition in this Court seeking redetermination of the deficiencies determined by the IRS. On

**[*7]** September 30, 2015, the parties filed a stipulation of settled issues agreeing that Capital Markets' gross receipts were underreported as follows:

| Year | Agreed underreported gross receipts |
| --- | --- |
| 2004 | $297,473 |
| 2005 | 161,102 |
| 2006 | 306,422 |
| 2007 | 60,319 |

Further the IRS agreed that Capital Markets was entitled to Schedule C deductions of $57,314 for 2004 and $175,815 for 2005, respectively, and that petitioners were entitled to deductions on Schedule A, Itemized Deductions, of $17,348 for 2004, $16,571 for 2005, $19,982 for 2006, and $16,647 for 2007, respectively.

Upon the recommendation of Mr. Arobo's attorney, Mrs. Arobo prepared a Form 8857, Request for Innocent Spouse Relief, which she signed on January 19, 2015. She submitted the form to the IRS on an unspecified day that month. Mrs. Arobo testified that when she submitted Form 8857 she did not know the progress of petitioners' case in this Court. Mr. Arobo testified that recently he had found employment with a financial company, which he anticipates will provide him with funds to pay petitioners' outstanding income tax liabilities.

**[*8]**                                        OPINION

I.      Section 6015(b) Relief

    1.      Introduction

In general, married taxpayers who file a joint Federal income tax return under the provisions of section 6013(a) and (d)(3) are jointly and severally liable for the tax reported or reportable on the tax return. Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and several liability under subsection (b).

Section 6015(b)(1) provides that a taxpayer will be relieved of liability for an understatement of tax if: (A) a joint return was made for the taxable year in question; (B) there is an understatement of tax attributable to erroneous items of the nonrequesting spouse; (C) the requesting spouse "establishes that in signing the return he or she did not know, and had no reason to know, that there was such understatement"; (D) taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the deficiency attributable to the understatement; and (E) the requesting spouse elects to invoke subsection (b) within two years after the date the Secretary has begun collection actions with respect to the requesting spouse.

[*9]    The requirements of section 6015(b)(1) are conjunctive.  Failure of a requesting spouse to satisfy any one of the elements precludes relief.  Alt v. Commissioner, 119 T.C. 306, 313 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).  The requesting spouse bears the burden of proving entitlement to section 6015(b) relief sought.  Id. at 311.

Respondent concedes that Mrs. Arobo satisfies the requirements of section 6015(b)(1)(A), (B), and (E), but asserts she does not meet the requirements of subparagraphs (C) (whether the requesting spouse established that she/he did not know, and had no reason to know, there was an understatement in income tax) and (D) (whether it would be inequitable to hold the requesting spouse liable for the deficiency).  Because we agree with respondent that the requirements of section 6015(b)(1)(C) have not been met, we do not address the requirements of subparagraph (D).

2.    Sec. 6015(b)(1)(C) Reason To Know

A taxpayer who signs a return is generally charged with constructive knowledge of its contents.  Porter v. Commissioner, 132 T.C. 203, 211-212 (2009).  Section 6015(b)(1)(C) requires that the spouse requesting relief must

[*10] establish that he/she did not know, and had no reason to know, of the understatement of tax on the returns.[2]

"An individual has reason to know of the understatement if a reasonably prudent taxpayer in her position at the time she signed the return could be expected to know that the return contained the understatement."  Hopkins v. Commissioner, 121 T.C. 73, 77 (2003); see sec. 1.6015-2(c), Income Tax Regs. Consequently, the requesting spouse has a "duty of inquiry" with respect to the income tax return filed.  Butler v. Commissioner, 114 T.C. 276, 283-284 (2000). The duty of inquiry is subjective, focusing on the individual seeking relief.  Smith v. Commissioner, T.C. Memo. 2009-237.  Factors to be considered in making this determination are:  (1) the requesting spouse's level of education; (2) the requesting spouse's involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared to the family's past levels of income, standard of living, and spending patterns; and (4) the culpable spouse's evasiveness and deceit concerning the couple's finances.  See Hayman v. Commissioner, 992 F.2d 1256, 1261 (2d Cir. 1993),

---

[2]"The requirement in section 6015(b)(1)(C) * * * is virtually identical to the same requirement of former section 6013(e)(1)(C); therefore cases interpreting former section 6013(e) remain instructive to our analysis."  Doyle v. Commissioner, T.C. Memo. 2004-35, 2004 WL 238022, at *8.

**[*11]** aff'g T.C. Memo. 1992-228. We believe Mrs. Arobo had reason to know of the understatement of tax on petitioners' returns for each year involved. Petitioners filed each of the 2004, 2005, 2006, and 2007 tax returns many years late. When petitioners' 2004 tax return was ultimately filed, and a $58,301 loss was reported, Mrs. Arobo should have suspected that something might be amiss.

The returns for 2005, 2006, and 2007 were filed only after the 2004 return was under IRS examination. Under the facts and circumstances present in this case, we would expect a reasonably prudent person in the position of Mrs. Arobo to be diligent, vigilant, and circumspect and that he/she would carefully review the 2005, 2006, and 2007 tax returns for accuracy.

Mrs. Arobo was a college-educated individual. She knew, or should have known, of her responsibility to file an accurate tax return, especially in view of the fact that she taught at-risk students to be responsible. She knew that the returns had been filed because petitioners had been contacted by the IRS. That knowledge should have put her on notice that petitioners' 2005, 2006, and 2007 tax returns would likely be subject to scrutiny. Even a cursory review of each year's tax return would have revealed that Mr. Arobo's mortgage origination business had reported (on line 12 of the first page of each return) substantial losses for 2004 and 2005 and that no business income or loss was reported for 2006 and 2007.

**[\*12]** Mrs. Arobo, as a reasonably prudent person, had a duty to question Mr. Arobo as to the accuracy of the 2004, 2005, 2006, and 2007 tax returns, but she did not. Rather, she signed each tax return without inspection. And a taxpayer who files a joint return with her spouse has a duty to inquire and may not avoid that duty by turning a blind eye to the contents of the joint return. Price v. Commissioner, 887 F.2d 959, 965 (9th Cir. 1989) (citing Levin v. Commissioner, T.C. Memo. 1987-67); Work v. Commissioner, T.C. Memo. 2014-190, at \*7.

Mrs. Arobo was responsible for paying the family's bills. Had she reviewed the tax returns she would have seen that the returns reported no net business income for four years and yet the family's standard of living was not diminished. See Reser v. Commissioner, 112 F.3d 1258, 1267-1268 (5th Cir. 1997) ("Tax returns setting forth 'dramatic deductions' will generally put a reasonable taxpayer on notice that further investigation is warranted."), aff'g in part, rev'g in part T.C. Memo. 1995-572; Levin v. Commissioner, T.C. Memo. 1987-67 (spouse requesting relief had a duty to inquire about large deductions reported on the face of the joint tax return and could not escape her responsibilities by ignoring the contents of the return when signing). As there was no indication that Mr. Arobo was deceitful or evasive with respect to the family's finances, Mrs. Arobo cannot escape her responsibility to be informed of the contents of the joint tax return.

**[\*13]** In sum, we find that Mrs. Arobo had reason to know of the understatements on each of the returns within the meaning of section 6015(b)(1)(C). We thus hold that Mrs. Arobo is not entitled to the requested relief from joint and several liability under section 6015(b).

## II.     Section 6015(f) Equitable Relief

Section 6015(f) provides for equitable relief under procedures prescribed by the Secretary if: (1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency and (2) relief is not available to the requesting spouse under subsection (b) or (c). The requesting spouse has the burden of proving that he/she is entitled to relief. Alt v. Commissioner, 119 T.C. at 311. We apply a de novo scope and standard of review in reviewing the requesting spouse's prayer for relief. Porter v. Commissioner, 132 T.C. at 210.

The IRS concedes that Mrs. Arobo meets the requirement of section 6015(f)(2), in that relief is not available under subsection (b) or (c). With respect to section 6015(f)(1), the Commissioner published Rev. Proc. 2013-34, 2013-43 I.R.B. 397, outlining the factors the IRS normally considers in deciding whether section 6015(f) relief should be granted. While this Court is not bound by IRS revenue procedures, we often look to them for guidance. Hollimon v.

**[*14]** <u>Commissioner</u>, T.C. Memo. 2015-157, at *7-*8; <u>see</u> <u>Pullins v.</u>
<u>Commissioner</u>, 136 T.C. 432, 438-439 (2011).

Rev. Proc. 2013-34, 2013-43 I.R.B. at 399-403, sets forth a three-step procedure to be followed in evaluating requests for relief: (1) section 4.01 lists seven threshold conditions which must be met; (2) section 4.02 lists circumstances in which the IRS will make streamlined relief determinations; and (3) section 4.03 sets forth nonexclusive factors that the IRS will consider in determining whether equitable relief should be granted because it would be inequitable to hold a requesting spouse jointly and severally liable. The IRS concedes that Mrs. Arobo meets the threshold requirements of section 4.01, and Mrs. Arobo concedes she does not qualify for the streamlined procedures of section 4.02. Hence, we focus on the nonexclusive factors of section 4.03.

Rev. Proc. 2013-34, sec. 4.03, provides a list of nonexclusive factors to be weighed by the Commissioner in making a decision. They include (a) marital status (i.e., do the spouses remain together?); (b) economic hardship; (c) knowledge or reason to know of the requesting spouse; (d) legal obligation arising from a divorce decree or other binding agreement; (e) significant benefit gained by the requesting spouse; (f) compliance with income tax laws; and (g) mental or physical health at the time of filing the request for relief. No single factor is

**[\*15]** determinative, and all factors are considered and weighed appropriately. Kellam v. Commissioner, T.C. Memo. 2013-186, at \*26.

The parties agree that factors (a) marital status, (f) tax compliance, and (g) mental/physical health are neutral and that the legal obligation factor is inapplicable. Accordingly, we limit our inquiry to factors (b) economic hardship; (c) knowledge or reason to know; and (e) significant benefit.

1.    Economic Hardship

Rev. Proc. 2013-34, sec. 4.03(2)(b), provides that an economic hardship "exists if satisfaction of the tax liability in whole or in part will cause the requesting spouse to be unable to pay reasonable basic living expenses." Whether a requesting spouse will suffer economic hardship is based on rules similar to those in section 301.6343-1(b)(4), Proced. & Admin. Regs. The facts and circumstances considered include: (1) the requesting spouse's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, and current tax payments; and (3) any extraordinary circumstances such as special educational expenses, a medical catastrophe, or a natural disaster. Id. In addition, the IRS considers the requesting spouse's current income (including how the requesting spouse's income compares to Federal poverty

[*16] guidelines) and assets in comparison with his/her expenses.  Rev. Proc. 2013-34, sec. 4.03(2)(b).  Factor (b) (economic hardship) weighs in favor of relief where the requesting spouse would suffer economic hardship if relief were denied and is neutral where the requesting spouse would not suffer such hardship if relief were denied.  Id.

Mrs. Arobo stated on Form 8857 that her monthly income in 2015 was $3,420 and that her monthly expenses were $3,360; thus, her monthly expenses do not exceed her monthly income.  Moreover, Mr. Arobo testifies that he expects to be able to pay petitioners' liability.  Consequently, Mrs. Arobo has not proven she will suffer economic hardship if we deny relief.  We find factor (b) is neutral.

2.     Knowledge or Reason To Know

Under this factor we examine whether the requesting spouse knew, or had reason to know, that there was an understatement or deficiency on the joint income tax return, or knew, or had reason to know, that the nonrequesting spouse would not or could not pay a reported but unpaid tax liability.[3]  See id. sec. 4.03(2)(c)(ii). The factors enunciated in the revenue procedure are essentially the same as those relied upon by section 6015(b)(1)(C).  As discussed in section I(2), supra, Mrs.

---

[3]There were no underpayment of tax reported on the joint returns for any of the years involved.

[*17] Arobo had reason to know of the understatements of tax. Moreover, Mrs. Arobo has not claimed that she was abused by Mr. Arobo or that he restricted her access to financial information. We find factor (c) weighs against relief.

3. Significant Benefit

Under this factor we consider whether the requesting spouse received a significant benefit, beyond normal support, from the unpaid income tax liability. Rev. Proc. 2013-34, sec. 4.03(2)(e). Normal support is measured by the circumstances of the particular parties. Porter v. Commissioner, 132 T.C. at 212. This factor will weigh in favor of relief if the nonrequesting spouse significantly benefited from the unpaid tax or understatement and the requesting spouse had little or no benefit or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment. Id.

Petitioners testified that they used their income to maintain their lifestyle. If Mr. Arobo's mortgage origination business had suffered the losses reported or had no income, petitioners' standard of living would have been significantly decreased. Thus, Mrs. Arobo, as well as Mr. Arobo, received the benefit of paying no tax on hundreds of thousands of dollars. Petitioners provided no documentation regarding the disposition of that benefit. Because Mrs. Arobo

**[\*18]** bears the burden of proving that she did not receive a significant benefit from the unreported income, but did not, this factor weighs against granting her relief.

### 4. Conclusion

Mrs. Arobo is not entitled to relief from joint and several liability under section 6015(f) for any of the years involved. No factor supports the requested relief, and the totality of the circumstances surrounding Mrs. Arobo's reason to have known of the understatements on petitioners' tax returns makes clear that it would not be inequitable to deny her the relief sought.

To reflect concessions made in the stipulation of settled issues,

Decision will be entered under

Rule 155.
