LISA M. ESPOSITO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Esposito v. Commissioner
Docket No. 2410-88
United States Tax Court
T.C. Memo 1991-262; 1991 Tax Ct. Memo LEXIS 310; 61 T.C.M. (CCH) 2854; T.C.M. (RIA) 91262; June 10, 1991, Filed *310 Decision will be entered for the petitioner. Todd W. Heck, for the petitioner. Barbara J. Fazekas, for the respondent. WHALEN, Judge. WHALEN
MEMORANDUM FINDING OF FACT AND OPINION Respondent determined the following deficiency in and additions to petitioner's Federal income tax for taxable year 1983: Sec. Sec.
Deficiency
6653(a)(1) [1]
6653(a)(2)
$ 2,835.00
$ 141.75 *
The issues for decision are: (1) Whether petitioner filed a joint Federal income tax return for 1983; and, if so, (2) whether petitioner qualifies under section 6013(e) as an "innocent spouse"; and (3) whether petitioner is liable for the additions to tax for negligence, determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The Stipulation of Facts filed by the parties and the attached exhibits are incorporated herein. Prior to 1981, petitioner *311 lived with her parents and was a full-time student. She completed 4 years of high school and 1 year of secretarial school. She also worked as a cashier in a supermarket for approximately 2 years while she attended high school. Petitioner's father prepared her Federal income tax returns using the so-called short form. She never prepared a Federal income tax return herself. In 1981, petitioner married Mr. Vincent A. Esposito. She was 19 years of age at the time and had known him for approximately 1 year. He was living in Atlantic City, New Jersey and wanted to become employed by one of the gambling casinos as a dealer. Petitioner moved to Atlantic City to live with Mr. Esposito. In Atlantic City, petitioner was employed initially as a secretary in a real estate broker's office. She later became a hotel clerk and, after that, a secretary for Bally's Park Place, Inc. During 1983, she worked for Bally's Park Place, Inc. for several months at the beginning of the year and worked as a secretary for BW Realty Corporation for the remainder of the year. Her wages during the year totaled $ 14,715.77, from which Federal income tax of $ 1,655.84 was withheld. Petitioner's weekly take-home *312 pay was approximately $ 225. Toward the end of 1983, petitioner attended a program sponsored by Casino Schools, Inc., to train casino dealers. In 1984, she obtained her dealer's license and became employed as a dealer by Trump Plaza Hotel & Casino. During 1983, Mr. Esposito was employed as a food server at the Tropicana Hotel & Casino and as a dealer at Bally's Hotel & Casino. He worked at the Tropicana Hotel & Casino on Sunday through Thursday nights. His work hours were from 6:00 p.m. to 1:00 a.m. but he usually arrived at the restaurant before his shift started, say by 4:00 p.m., and very often he socialized with friends after work and would not arrive home until the early morning hours. On Saturday and Sunday, Mr. Esposito was employed during the day by Bally's Hotel & Casino as a dealer. Mr. Esposito's wages during 1983 totaled $ 18,430.51, from which Federal income tax of $ 1,636.48 was withheld. He also realized tip income of at least $ 8,645.72 of which $ 7,640 was not reported on Mr. Esposito's 1983 Federal income tax return, discussed below. The record in this case does not reveal Mr. Esposito's employment or his work schedule during 1981, 1982, or 1984, but it *313 appears that he also worked on week nights during those years and was able to be at home on week days. As a result of their different work schedules, petitioner saw little of Mr. Esposito during the week. During their marriage, Mr. Esposito dominated the handling of the couple's finances. He was able to be at home during business hours on weekdays and he received the mail while petitioner was at work. He paid all the household bills, wrote most of the checks on the couple's joint checking account, and had sole access to the joint savings account bank book. In addition, he made all deposits to the couple's checking and savings accounts, including petitioner's pay check. Petitioner's use of the joint checking account was limited to writing checks for food at the supermarket. Mr. Esposito gave petitioner an allowance of approximately $ 20 per week. He refused to give her any more than $ 20 per week. When she asked for more, he would invariably tell her that "they didn't do well in the restaurant." From time to time, petitioner's parents supplemented the money she was given by Mr. Esposito with cash gifts and personal articles of clothing which they bought for her. Petitioner's *314 parents also took the couple to dinner when they visited them in Atlantic City. Petitioner and Mr. Esposito resided in a new townhouse which they purchased with no down payment and for which they made mortgage payments of $ 925 per month. The couple had received wedding gifts which included $ 5,000 in cash. Petitioner drove a 1975 Ford Mustang which her parents had bought for her several years earlier as a used car. Mr. Esposito drove a 1982 Ford Mustang for which the couple made payments of approximately $ 360 per month until 1983 when he purchased a 1983 Buick Riviera. The couple paid $ 499.99 per month for Mr. Esposito's Riviera. During 1983, petitioner and Mr. Esposito took one trip to Florida for a week's vacation and stayed with Mr. Esposito's parents. They also took several trips to New York City during the year but they never stayed overnight at their own expense. On the other hand, in 1982 Mr. Esposito traveled without petitioner to the Bahamas where he gambled extensively. In the early part of 1984, Mr. Esposito went to an H&R Block office and an employee of that company prepared a Federal income tax return for 1983 based on information supplied by Mr. Esposito. *315 The return bore the names of both petitioner and Mr. Esposito and it purported to elect "married filing joint return" as their filing status. The return claimed an overpayment of $ 1,409. Forms W-2 for both petitioner and Mr. Esposito were attached to the return. It reported total wages and tip income in the amount of $ 34,152. Actually, petitioner and Mr. Esposito had received wages and tip income during 1983 of at least $ 41,792. The difference, $ 7,640, consists of the unreported tip income realized by Mr. Esposito, mentioned above. Mr. Esposito signed his name to the 1983 return. A signature purporting to be petitioner's also appears on the return. Petitioner did not place it there. In fact, petitioner did not know that Mr. Esposito had taken her Forms W-2 to H&R Block to have a joint return prepared. She was never afforded an opportunity to review the return before it was filed. It is not clear from the record who signed petitioner's name to the 1983 return. Petitioner did not authorize Mr. Esposito to sign an income tax return for her and she did not execute a Power of Attorney authorizing anyone else to sign a return on her behalf. The preparation and filing of *316 the couple's 1982 return had taken place in the same manner as the 1983 return. That is, Mr. Esposito went by himself to an H&R Block office and an employee of H&R Block prepared a Federal income tax return for taxable year 1982 based on information supplied by Mr. Esposito. The 1982 return purported to elect the filing status "married filing joint return." Petitioner did not sign the 1982 return, and was never afforded an opportunity to review the return before it was filed. Petitioner's father had prepared the couple's 1981 Federal income tax return, using the so-called short form. This is the only joint return with Mr. Esposito which petitioner signed. Petitioner separated from Mr. Esposito in November of 1984. Mr. Esposito stopped making monthly mortgage payments on the couple's townhouse and the bank foreclosed the mortgage and took the townhouse in payment thereof. Shortly before the townhouse was taken in the foreclosure proceeding, Mr. Esposito unilaterally removed furniture and other personal property worth $ 7,000 from the townhouse. Sometime after their separation, petitioner filed an action for divorce alleging that Mr. Esposito was never at home and further alleging *317 that he had said he did not like being married and did not want to remain married. The couple was divorced in the latter part of 1985. Under the divorce settlement, petitioner received a total of $ 600, comprised of one-half of the couple's Christmas Club bank account, $ 500, and $ 100 from an income tax refund. Mr. Esposito retained the 1983 Buick Riviera which he acquired while the couple was married and he retained the $ 7,000 worth of property and furniture which he had removed from the couple's townhouse. In August 1986, the Internal Revenue Service began an audit of the 1983 return, described above, filed in the names of petitioner and Mr. Esposito. The principal focus of the audit was whether the tip income realized by Mr. Esposito during 1983 had been accurately reported. During the audit, petitioner met with a revenue agent who displayed the 1982 and 1983 returns filed by Mr. Esposito. This was the first time petitioner had seen the returns and she told the agent that she had not signed either return. The agent acknowledged that the signatures on the returns did not appear to be petitioner's signatures. The agent told petitioner that, if she cooperated with the Internal *318 Revenue Service, then she would be treated as an "innocent spouse." The agent advised petitioner to submit the following statement: 3-3-87 This is to verify my intent to file a joint income tax return for 1983 with my ex-husband Vincent A. Esposito. I did not sign the original return or see it until it came under audit, but I voluntarily gave him the W-2's to have a joint return prepared.
Lisa M. Esposito Petitioner was not represented by an attorney at the time and she followed the agent's advice. On the same day, petitioner executed two Forms 872-A, Special Consent to Extend the Time to Assess Tax, covering 1983. One Consent extended the period of limitations on assessments and collections imposed by section 6501(a) for any Federal Insurance Contributions Act (F.I.C.A.) taxes due on any return of petitioner and Mr. Esposito for 1983. The other Consent extended the period of limitations on assessment and collection for any Federal income taxes due on any return made by petitioner and Mr. Esposito for 1983. Petitioner had one or more meetings with respondent's agents or employees during which she complained that neither the 1982 nor the 1983 return filed by Mr. Esposito *319 bore her signature. A special agent of respondent met with her about the complaint. The special agent advised her to file separate income tax returns for 1982 and 1983. A clerk at the Internal Revenue Service office prepared a return for both years, based upon the filing status "married filing separate return." Petitioner signed the returns and filed them with the Internal Revenue Service. Petitioner's 1983 income tax return reports an overpayment of $ 662. Thereafter, respondent issued duplicate original notices of deficiency to both petitioner and Mr. Esposito in which he determined, among other adjustments, that Mr. Esposito's tip income was understated by $ 10,186.39. He further determined to impose additions to tax for negligence, pursuant to section 6653(a)(1) and (2). Petitioner and Mr. Esposito filed separate petitions in this Court. Petitioner resided in Smithville, New Jersey at the time. Subsequently, Mr. Esposito entered into Stipulation of Settled Issues in which he agreed with respondent that he had received $ 7,640 of unreported tip income during taxable year 1983 and in which he and respondent resolved the other issues in his case. Mr. Esposito's tax for *320 1983 cannot be computed, however, until his filing status is determined in this proceeding. OPINION Section 6013 allows a husband and wife to make a single return jointly of Federal income taxes (joint return) and it provides that the liability of each spouse with respect to the tax on a joint return is "joint and several." Sec. 6013(d)(3); Davenport v. Commissioner, 48 T.C. 921, 926 (1967); Dolan v. Commissioner, 44 T.C. 420, 426-427 (1965). Section 6061 states that any return required to be made under the internal revenue laws or regulations shall be signed in accordance with the forms or regulations prescribed by the Secretary of Treasury. In the case of a joint return, section 1.6013-1(a)(2), Income Tax Regs., requires both spouses or their authorized agent to sign the return. In this case, neither petitioner nor her authorized agent signed the 1983 return filed by Mr. Esposito. Thus, the first question presented is whether petitioner can be held jointly and severally liable for the tax deficiency and additions determined by respondent. As a prerequisite for holding her liable, we must find that the return filed by Mr. Esposito constitutes *321 a joint return under section 6013(a). Whether a taxpayer filed a joint return is a question of fact. E.g., O'Connor v. Commissioner, 412 F.2d 304, 309 (2d Cir. 1969), affg. in part, revg. and remanding in part T.C. Memo 1967-174, cert. denied 397 U.S. 921 (1970); Shea v. Commissioner, 780 F.2d 561, 567 (6th Cir. 1986), affg. in part, revg. and remanding in part T.C. Memo 1984-310. The fact that one spouse did not sign the return does not foreclose a finding that it is a joint return, if there is sufficient evidence to establish that the nonsigning spouse intended to file a joint return. See, e.g., Shea v. Commissioner, supra at 567; Estate of Campbell v. Commissioner, 56 T.C. 1, 12 (1971); Federbush v. Commissioner, 34 T.C. 740, 757 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); Heim v. Commissioner, 27 T.C. 270 (1956), affd. 251 F.2d 44 (8th Cir. 1958); Kann v. Commissioner, 18 T.C. 1032, 1045 (1952), affd. 210 F.2d 247, 251 (3d Cir. 1953), *322 cert. denied 347 U.S. 967, 98 L. Ed. 1109, 74 S. Ct. 778 (1954); Howell v. Commissioner, 10 T.C. 859, 866 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949). However, the fact that one spouse did not sign a purported joint return means that the burden of producing additional evidence to show that the nonsigning spouse intended to file a joint return shifts to the Commissioner. O'Connor v. Commissioner, supra at 309. The last cited opinion of the Second Circuit states as follows: While the wife's failure to sign the return does not preclude a finding of a joint return, it removes the presumption of correctness ordinarily attaching to the Commissioner's determination of jointness. Moreover, it shifts to the Government the burden of producing additional evidence on the issue. [Citation omitted.]
Thus, while the taxpayer continues to bear the ultimate burden of proof, the Commissioner bears the burden of going forward with evidence from which the Court can conclude that the nonsigning spouse intended to file the purported joint return. Douglass v. Commissioner, T.C. Memo 1984-369. Respondent contends *323 that there is ample evidence in this case to show that petitioner intended the 1983 return filed by her former husband, Mr. Esposito, to be her joint return. For the most part, the evidence on which he relies consists of Mr. Esposito's testimony about the preparation and filing of the 1983 return. Mr. Esposito testified, in effect, that petitioner orchestrated the preparation and filing of the 1983 return. He testified that petitioner kept the couple's "tax records," that she called H&R Block to arrange for the preparation of the couple's 1983 return, that she asked Mr. Esposito if he had filed the 1983 return and told him "to go get it done," that the H&R Block representative called petitioner at work and spoke to her at the time the return was prepared, and that Mr. Esposito gave petitioner a copy of the return after it was filed. On the other hand, petitioner's testimony directly contradicts Mr. Esposito's. Petitioner testified that she did not sign the 1982 or the 1983 return, that she did not authorize Mr. Esposito or any other person to sign either return on her behalf, that she did not participate in having the 1983 return prepared, that she did not give Mr. Esposito her *324 Forms W-2 for 1983, that she was never afforded an opportunity to review the 1983 return before it was filed and, if she had, she would not have signed it, and that she did not see the return until the audit in 1986. In order to resolve the factual issues presented in this case, including whether petitioner intended to file a joint return for 1983, it is necessary for the Court to choose between the contradictory testimony of petitioner and Mr. Esposito, both of whom are interested in the outcome of this proceeding. We observed their demeanor at trial and we have evaluated the credibility of their testimony. We found petitioner to be a highly creditable witness. On the other hand, we found Mr. Esposito's testimony to be equivocal, evasive, and unconvincing. One example will serve to illustrate the nature of Mr. Esposito's testimony. He testified as follows about petitioner's signature on the 1983 return: Q. Who signed Lisa's name to the 1983 joint return? A. I must have. Q. You must have? You're not certain if you did? A. I don't recall, but if it's not her signature, I would imagine I must have signed it. Q. Is it possible that someone else might have signed it *325 then? A. I don't -- I don't believe so, no. Q. But you can't say with certainty that you, in fact, signed it? A. No, I do not recall signing it. * * * Q. And you can't recall who signed it? But you think -- A. I must have signed it. If she didn't sign it, there was no else to sign it but me. * * * Q. Why didn't you get Lisa to sign the return herself? A. I really don't recall. I don't even recall signing the return. I told you that. Q. Did you get her to sign the 1982 return? Do you recall? A. Yes, she did. Q. She did sign the 1982 return? A. Yes. Q. So this was the only year. This was just a one time thing that -- A. It's the only thing I heard of, yes. Q. -- somehow her signature showed up on this return and you don't remember exactly how it got there. A. I must have signed it.
The above testimony is particularly revealing when considered in light of Mr. Esposito's other testimony, summarized above, that petitioner played the dominant role in overseeing the preparation and filing of the 1983 return. Significantly, as quoted above, when Mr. Esposito was asked why he did not obtain petitioner's signature on the return, he replied, "I really *326 don't recall." This failure to offer any explanation for petitioner's failure to sign the 1983 return, by itself, casts doubt upon Mr. Esposito's testimony that petitioner orchestrated its preparation and filing. If we disregard Mr. Esposito's testimony, we are unable to infer from the record in this case that petitioner intended to file a joint return with Mr. Esposito. Unlike the cases cited by respondent, petitioner did not have a history of relying upon Mr. Esposito for the preparation and filing of her Federal income tax returns. See Estate of Campbell v. Commissioner, supra at 13; Federbush v. Commissioner, supra at 748. The only joint return with Mr. Esposito which she signed, her 1981 return, had been prepared by her father, in accordance with their practice in prior years. There is insufficient other evidence from which to infer that she intended to file a joint return. We note petitioner's testimony that she was aware of her obligation to file a 1983 return and we note the fact that she failed to file a separate return until the time of the audit in 1987. We also note petitioner's candid testimony that she expected Mr. *327 Esposito to have the couple's return prepared and, when she asked him about it, "he'd say he took care of everything." Nevertheless, we are unable to infer that petitioner intended to file a joint return with Mr. Esposito. Cf. Shea v. Commissioner, supra at 567. In fact, we infer the opposite. We believe that Mr. Esposito failed to obtain petitioner's signature on the 1983 return because he did not think that she would sign it. After all, in 1984, when the 1983 return was prepared, it is evident that the couple was well on their way to the separation which took place 8 months later. Moreover, petitioner's separate tax obligation had been satisfied by Federal income tax withholding from her wages. Respondent attaches significance to the statement submitted by petitioner on March 3, 1987, "to verify" her intent to file a joint return for 1983 with Mr. Esposito. According to petitioner, the statement was submitted on the advice of an Internal Revenue Service agent who told her that it would bolster her claim for "innocent spouse" relief under section 6013(e). In light of that testimony, we attach no weight to the statement which was signed approximately *328 3 years after the fact. For the same reason, we are not persuaded that petitioner's execution of the Consent Forms for 1983 on the same day is an admission that she intended the return to be a joint return. Finally, in support of his contention that she intended to file a joint return, respondent points to the fact that petitioner's Forms W-2 were attached to the return. In two cases cited by respondent, Douglass v. Commissioner, T.C. Memo 1984-369 and LaBelle v. Commissioner, T.C. Memo 1984-69, the Court concluded that the taxpayers intended to file a joint return with their husbands from the fact that their Forms W-2 were attached to the return. The Court inferred that each taxpayer gave the form to her spouse with the understanding that it would be used in the preparation of a joint return. Such inference was rebutted in the instant case by petitioner's credible testimony that she never gave her Forms W-2 to Mr. Esposito. We believe her testimony that Mr. Esposito must have intercepted her Forms W-2 when they arrived in the mail. The instant case is distinguishable from O'Connor v. Commissioner, supra, Federbush v. Commissioner, supra, *329 and Howell v. Commissioner, supra, the cases on which respondent principally relies. In those cases, the Courts were persuaded by the strong circumstantial evidence that the nonsigning spouse tacitly consented to the filing of a joint return on her behalf. In the instant case, we are not similarly persuaded. We find that the evidence is insufficient to conclude that petitioner intended the 1983 return filed by Mr. Esposito to constitute her return. In light of the above, it is unnecessary for us to address the other issues in this case, that is, whether petitioner qualifies as an "innocent spouse" under section 6013(e) and whether she is liable for the additions to tax for negligence as determined by respondent. Decision will be entered for the petitioner. Footnotes
1. All section references are to the Internal Revenue Code as amended.↩
*. 50 percent of the interest due on the underpayment.↩