T.C. Summary Opinion 2017-46

UNITED STATES TAX COURT

MICHEL K. PETREE a.k.a. MICHEL K. SWANSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26887-13S.                    Filed June 29, 2017.

<u>Frank A. DiPietro</u>, <u>Kathryn J. Sedo</u>, and James Minor (specially

recognized), for petitioner.

<u>Christina L. Cook</u>, for respondent.

SUMMARY OPINION

PUGH, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1] Unless otherwise indicated, section references are to the Internal Revenue
(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner seeks review under section 6015(e)(1) of respondent's determination that she is not entitled to relief from joint and several liability for taxable years 2007 and 2008 with respect to unpaid tax of $8,685 and $4,884,[2] respectively, that was reported on the joint Forms 1040, U.S. Individual Income Tax Return, filed bearing her name and the name of her former spouse, Richard Swanson.

The issues for decision are whether petitioner: 1) filed joint Forms 1040 for 2007 and 2008 and 2) is entitled to equitable relief from joint and several liability under section 6015(f).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Minnesota at the time her petition was timely filed.

---

[1](...continued)
Code of 1986 as amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] All monetary amounts are rounded to the nearest dollar.

Petitioner and Richard Swanson married in 1989. During their marriage, and in particular in 2007 and 2008, Mr. Swanson was employed as an attorney and petitioner was not employed outside the home. Mr. Swanson had a problem with alcohol during the relevant years, causing difficulty in the marriage. He attempted suicide in 2004 and made repeated threats of suicide to petitioner on several occasions between 2004 and 2010. Mr. Swanson hoped that his threats would cause petitioner to stay in the marriage, but she and Mr. Swanson ultimately divorced in December 2011. Petitioner and Mr. Swanson sought assistance from a psychologist, Mr. Reardon, beginning some time before the filing of the Forms 1040 at issue here, and she continued to see Mr. Reardon after the divorce.

Before 2006 petitioner and Mr. Swanson had ongoing problems with the payment of tax liabilities. Because of financial difficulties they experienced, petitioner took an increased role in their finances, including tracking personal expenses, starting in approximately 2006. Also in 2006 petitioner found and hired an accountant and under the advice of the accountant started keeping track of Mr. Swanson's law practice expenses. In addition, petitioner was a signatory on Mr. Swanson's law firm account and at times wrote checks for the law firm. Throughout 2007 and 2008 petitioner and Mr. Swanson took a few vacations,

including vacations to Florida and Mexico. Petitioner and Mr. Swanson owned a timeshare in Mexico through Mr. Swanson's law firm.

Throughout their marriage petitioner and Mr. Swanson filed joint Forms 1040. Petitioner also became more involved in the preparation and filing of their Forms 1040 in the relevant years, because of the financial difficulties. The withholding on Mr. Swanson's income was not sufficient to pay the entire tax liability as reported on their joint Form 1040 for 2006, and petitioner and Mr. Swanson owed additional tax at the end of the year. Petitioner wrote a check for the remaining liability and submitted it with their completed 2006 Form 1040.

Petitioner found and hired Larry Atneoson, an accountant, to prepare and file Forms 1040 for herself and Mr. Swanson for tax years 2007 and 2008 and assisted in the preparation of those Forms 1040. The record is unclear as to when, before the filing of the 2007 return, petitioner first spoke with and hired Mr. Atneoson. Petitioner gave many of the required documents to Mr. Atneoson for both 2007 and 2008, and he followed up with her by telephone for additional information. Mr. Atneoson sometimes dealt with Mr. Swanson as well. Mr. Atneoson's office was across the street from Mr. Swanson's office, and Mr. Atneoson at times would pick up and drop off documents at Mr. Swanson's office.

The 2007 Form 1040 bearing the names of Mr. Swanson and petitioner and prepared by Mr. Atneoson, was signed by Mr. Swanson. It was filed on or about January 12, 2009, and reported an unpaid liability of $8,685. Although petitioner's name also was signed, the signature was not petitioner's; and it is unclear who signed on petitioner's behalf. Petitioner did not make any effort to file a separate return or otherwise object to the filing of the 2007 Form 1040.

The 2008 Form 1040 bearing the names of petitioner and Mr. Swanson was prepared by Mr. Atneoson and was filed electronically by Mr. Atneoson on or about May 21, 2009, the date it was signed electronically. It reported an unpaid liability of $4,884. Before filing a return electronically, Mr. Atneoson required a client to complete and sign a Form 8879, IRS e-file Signature Authorization, and he retained the Forms 8879 for a period in his records. He recalled receiving a Form 8879 authorizing the electronic filing of the 2008 Form 1040 for petitioner and Mr. Swanson, but the Form 8879 was no longer available because of the age of the records. The record thus does not indicate whether Mr. Swanson, or petitioner, or both authorized the filing. Petitioner did not make any effort to file a separate return or otherwise object to the filing of the 2008 Form 1040.

During the course of preparing the Forms 1040, petitioner and Mr. Atneoson spoke about the liabilities for 2007 and 2008 and about increasing Mr. Swanson's withholding to avoid having outstanding liabilities for later years.

Petitioner conceded that she has not filed an accurate tax return for 2011, 2012, 2013, or 2014.

On February 12, 2013, respondent received petitioner's Form 8857, Request for Innocent Spouse Relief. On September 5, 2013, respondent issued to petitioner the final determination denying her request for relief from joint and several liability. On April 22, 2015, after the petition was filed in this case, petitioner and Mr. Swanson signed an agreement to modify the spousal maintenance order in the divorce decree to include a provision that Mr. Swanson would assume all responsibility for the Federal tax liabilities for tax years 2007 and 2008 and would cease making spousal maintenance payments to petitioner in return.

In 2015 petitioner was paid $24,323 in wages from Total Automotive, Inc. During 2015 petitioner received some spousal maintenance payments from Mr. Swanson until the spousal maintenance order was modified, but she did not provide evidence of the amount she received. Petitioner did not provide

documentation of her current living expenses and was sharing some living expenses with a boyfriend.

At the time of trial petitioner held title to and had possession of a motorcycle awarded to Mr. Swanson in the divorce decree. The motorcycle was purchased in petitioner's name originally because Mr. Swanson had bad credit and could not obtain financing in his name. Petitioner was unable to transfer the title to the motorcycle to Mr. Swanson when they divorced because she was unable to assign the financing to him. In addition to this motorcycle, petitioner's assets include a 2004 Chevy Tahoe, a 2005 Yamaha Vino scooter, a 2013 Harley Davidson, and a 2016 camper.

## Discussion

### I. Joint Federal Income Tax Returns for 2007 and 2008

Section 6061 and section 1.6013-1(a)(2), Income Tax Regs., generally require that a joint tax return be signed by both spouses. However, if an income tax return is intended by both spouses as a joint return, absence of the signature of one spouse does not prevent their intention from being realized. Estate of Campbell v. Commissioner, 56 T.C. 1, 12 (1971). This exception generally is applied when one spouse signs a joint return (usually signing for both spouses) and it is shown that the other spouse tacitly consented to the joint return filing.

This is commonly referred to as the tacit consent rule. See, e.g., Hennen v. Commissioner, 35 T.C. 747, 748 (1961). Whether a husband and wife intended to file a joint return therefore is important to our determination of whether the tax return qualifies as a joint return. Stone v. Commissioner, 22 T.C. 893, 900-901 (1954). In evaluating intent, the Court has considered whether the nonsigning spouse filed a separate return, whether the nonsigning spouse objected to the joint filing, and whether the prior filing history indicates an intent to file jointly. Harrington v. Commissioner, T.C. Memo. 2012-285, at *8.

Although the taxpayer generally bears the burden of proving that the Commissioner's determinations are not correct, Welch v. Helvering, 290 U.S. 111, 115 (1933), in the case of a spouse who does not sign a purported joint return, the Commissioner bears the burden of producing evidence that a joint return was filed. O'Connor v. Commissioner, 412 F.2d 304, 309 (2d Cir. 1969), aff'g in part, rev'g in part T.C. Memo. 1967-174; Carrick v. Commissioner, T.C. Memo. 1991-502. Accordingly, although the ultimate burden of proof regarding the correctness of respondent's determination remains with petitioner, respondent bears the burden of going forward with evidence from which the Court could conclude that petitioner intended to file the 2007 and 2008 joint returns. See Esposito v.

Commissioner, T.C. Memo. 1991-262, 1991 Tax Ct. Memo LEXIS 310, *13

(citing Douglass v. Commissioner, T.C. Memo. 1984-369).

At trial petitioner asserted that she did not know that there were outstanding liabilities for tax years 2007 and 2008. She also asserted that even though it was her original intention to file joint returns when she hired Mr. Atneoson to prepare the tax returns, she would not have filed a joint tax return for either year had she known that there were outstanding liabilities. We do not find petitioner's denials credible, nor do we find credible her claim that she would have refused to file the returns jointly had she known. Throughout their marriage petitioner and Mr. Swanson filed joint returns. Petitioner wrote the check to pay the outstanding tax liability for 2006. She hired Mr. Atneoson to prepare the 2007 and 2008 returns and was involved in the preparation of those returns. Because of the liability owed for 2006, petitioner discussed with Mr. Atneoson increasing Mr. Swanson's withholding to avoid outstanding liabilities for later tax years. No evidence in the record indicates that Mr. Swanson intentionally withheld any information from petitioner regarding the 2007 and 2008 tax liabilities. Petitioner was aware that the 2007 and 2008 joint returns had been filed, she did not object to their filing, and she did nothing to disavow them after they were filed.

We find that petitioner and Mr. Swanson intended to file joint returns and that petitioner tacitly consented to the filing of the joint returns for 2007 and 2008.

## II. Relief Under Sec. 6015(f)

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3); see Butler v. Commissioner, 114 T.C. 276, 282 (2000). A requesting spouse, however, may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability under section 6015(c). Sec. 6015(a). If relief is not available to a requesting spouse under section 6015(b) or (c), subsection (f) gives the Commissioner discretion to grant equitable relief from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)". Sec. 6015(f)(1). Petitioner concedes that she does not qualify for relief from joint and several liability under either section 6015(b) or (c) and seeks relief under section 6015(f) only. Petitioner bears the burden of proving that she is entitled to relief under section 6015(f). See Rule 142(a); see also Porter v. Commissioner, 132 T.C. 203, 210 (2009). The Court applies a de novo scope and

standard of review in deciding whether a taxpayer is entitled to relief under section 6015(f).  Porter v. Commissioner, 132 T.C. at 210.

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under 6015(f) in Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399-400.  We consult these guidelines when reviewing the Commissioner's denial of relief, but we are not bound by them as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances.  See Molinet v. Commissioner, T.C. Memo. 2014-109; Sriram v. Commissioner, T.C. Memo. 2012-91; see also Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v. Commissioner, 132 T.C. at 210.

A.  Threshold Conditions

The revenue procedure lists seven threshold conditions, all of which a spouse must meet to qualify for relief under section 6015(f):  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) the relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent

certain enumerated exceptions (none of which applies in this case), the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. See Rev. Proc. 2013-34, sec. 4.01. Respondent concedes that petitioner meets all the threshold conditions except conditions 4 and 5. Respondent argues that the motorcycle awarded to Mr. Swanson in the divorce that remained in petitioner's possession disqualifies petitioner from relief from joint and several liability under those threshold conditions. See id. sec. 4.01(4) and (5). We disagree.

### 1. Transfer of Assets Between Spouses

We cannot conclude on the record before us that petitioner's retention of the motorcycle was part of a fraudulent scheme between her and Mr. Swanson. Wiener v. Commissioner, T.C. Memo. 2008-230, 2008 WL 4568030, at *11 (holding that even if the taxpayer's transfer of property could have been characterized as a transfer between spouses, it was not a fraudulent transfer because the requesting spouse did not know of the tax liability and therefore did not intend the transfer as a fraudulent transfer); Rev. Proc. 2013-34, sec. 4.01(4). The title to the motorcycle always has been in petitioner's name, and she gave a credible reason for not transferring the title to the motorcycle to Mr. Swanson

(namely, her inability to assign the motorcycle financing to him because of his bad credit).

### 2. Transfer of Disqualified Assets

Nor can we conclude on the record before us that the fact that petitioner still had this motorcycle constituted a transfer of a disqualified asset under Rev. Proc. 2013-34, sec. 4.01(5). Section 6015(c)(4)(B)(i) defines "disqualified asset" as

> any property or right to property transferred to an individual making the election under this subsection with respect to a joint return by the other individual filing such joint return if the principal purpose of the transfer was the avoidance of tax or payment of tax.

As we stated above, petitioner gave a credible reason for not transferring the title to the motorcycle to Mr. Swanson. We conclude therefore that the principal purpose of petitioner's not transferring the title to Mr. Swanson's motorcycle to his name was not the avoidance of tax or payment of tax. (For these purposes we assume, without deciding, that petitioner's not transferring title and possession of an asset awarded to Mr. Swanson could constitute a transfer.) Therefore the motorcycle is not a disqualified asset and petitioner meets the fifth threshold condition.

B. Streamlined Procedure

If the threshold conditions are satisfied, Rev. Proc. 2013-34, sec. 4.02,

2013-43 I.R.B. at 400, lists the circumstances or conditions under which the

Commissioner will generally make streamlined determinations granting equitable

relief in cases where a liability reported on a joint return is unpaid:

> The Service will make streamlined determinations granting equitable
> relief * * * in cases in which the requesting spouse establishes that
> the requesting spouse:
>
> (1) Marital Status.  Is no longer married to the nonrequesting spouse
> as set forth in section 4.03(2)(a);
>
> (2) Economic Hardship.  Would suffer economic hardship if relief
> were not granted as set forth in section 4.03(2)(b); and
>
> (3) Knowledge or Reason to Know.
>
>     (a) Section 6015(f) cases. * * * did not know or have reason to
> know that the nonrequesting spouse would not or could not pay the
> underpayment of tax reported on the joint income tax return, as set
> forth in section 4.03(2)(c)(ii). * * *

The Commissioner will grant equitable relief to the extent that the unpaid liability

is allocable to the nonrequesting spouse only if all three conditions of Rev. Proc.

2013-34, sec. 4.02, are satisfied.  Id. sec. 4.02(1).  Respondent concedes that

petitioner satisfies the first of the three conditions.

To satisfy the knowledge or reason to know condition of Rev. Proc. 2013-34, sec. 4.02, petitioner must establish that it was reasonable for her to believe that Mr. Swanson would pay the amounts shown as due on the joint returns for 2007 and 2008 at the times when the joint returns were filed. Petitioner cannot rely on her claimed lack of awareness of the amounts shown as due on these returns to establish that it was reasonable for her to believe that Mr. Swanson would pay these amounts. Petitioner is charged with constructive knowledge of the amounts shown on the 2007 and 2008 returns because she tacitly consented to their filing. See Reilly-Casey v. Commissioner, T.C. Memo. 2013-292 (holding that even if the taxpayer did not sign the returns, the taxpayer tacitly consented to the joint return filings and is therefore charged with knowledge of the joint returns); see also Hayman v. Commissioner, 992 F.2d 1256, 1262 (2d Cir. 1993) (holding that taxpayer who signed returns without reading them is nonetheless charged with constructive knowledge of their contents), aff'g T.C. Memo. 1992-228. Petitioner wrote the check to pay the 2006 liability and worked with Mr. Atneoson on the preparation of the 2007 and 2008 returns. And during this time she spoke with Mr. Atneoson about changing Mr. Swanson's withholding so that no additional tax would be owed for subsequent tax years.

We have consistently held that the provisions for relief from joint and several liability are designed to protect the innocent, not the intentionally ignorant. Morello v. Commissioner, T.C. Memo. 2004-181; Dickey v. Commissioner, T.C. Memo. 1985-478. A requesting spouse's knowledge of financial difficulties deprives the requesting spouse of a reason to believe that her spouse will pay the tax liability. Karam v. Commissioner, T.C. Memo. 2011-230, 2011 WL 4448937, at *5 (citing Stolkin v. Commissioner, T.C. Memo. 2008-211), aff'd, 504 F. App'x 416 (6th Cir. 2012). A reasonable belief that taxes would be paid must incorporate a belief that funds would be available within a reasonably short period. Banderas v. Commissioner, T.C. Memo. 2007-129, 2007 WL 1484504. Petitioner knew that she needed to take an increased role in the family finances because of the past difficulties and did so beginning in 2006. Petitioner had full access to the family's finances and often was in charge of paying bills. She paid the 2006 tax liability. Under these facts we find that it was not reasonable for petitioner to believe that Mr. Swanson would pay the amounts shown as due on the Forms 1040 for 2007 and 2008.

Rev. Proc. 2013-34, sec. 4.02(3)(a), states that if a requesting spouse was abused by the nonrequesting spouse

> and because of the abuse * * * the requesting spouse was not able to
> * * * question the payment of the taxes reported as due on the joint
> return or challenge the nonrequesting spouse's assurance regarding
> payment of the taxes, for fear of the nonrequesting spouse's
> retaliation, then the abuse * * * will result in this factor being
> satisfied even if the requesting spouse * * * knew or had reason to
> know that the nonrequesting spouse would not pay the tax liability.

Petitioner points to several incidences where Mr. Swanson threatened or attempted suicide or harm to himself. We do not downplay the difficulties and strain caused by these threats or Mr. Swanson's problems with alcohol. But petitioner has not shown that Mr. Swanson's actions impaired her access to information about the outstanding liabilities or her ability to challenge the filing of the joint returns. By the time these returns were filed, petitioner had taken increased responsibility for the family finances and had become more involved with the business finances, including writing the check to pay the couple's outstanding tax liability for 2006.

We therefore conclude that petitioner does not satisfy the knowledge or reason to know condition of Rev. Proc. 2013-34, sec. 4.02, and does not qualify for equitable relief under the streamlined procedure of Rev. Proc. 2013-34, sec. 4.02. Because we hold that petitioner does not satisfy the reason to know condition, we do not need to evaluate whether making the payments toward the tax liability would result in economic hardship for her under Rev. Proc. 2013-34, sec. 4.02.

C.  <u>Rev. Proc. 2013-34, Sec. 4.03</u>

If the requesting spouse satisfies the threshold conditions of Rev. Proc. 2013-34, sec. 4.01, but does not qualify for relief under Rev. Proc. 2013-34, sec. 4.02, the Commissioner looks to Rev. Proc. 2013-34, sec. 4.03, 2013-43 I.R.B. at 400, to determine whether the taxpayer should be granted equitable relief.

Rev. Proc. 2013-34, sec. 4.03(2), provides a list of nonexclusive factors that the Commissioner may weigh in making his determination relating to relief from joint and several liability, including:  (1) whether the requesting spouse is separated or divorced from the nonrequesting spouse; (2) whether the requesting spouse would suffer economic hardship if relief is not granted; (3) in underpayment cases whether, on the date the joint return was filed, the requesting spouse had knowledge or reason to know that the nonrequesting spouse would not or could not pay the tax liability at that time; (4) whether the nonrequesting spouse has a legal obligation to pay the tax liability pursuant to a decree of divorce or other agreement; (5) whether the requesting spouse significantly benefited from the item giving rise to the deficiency; (6) whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws for the taxable years following the taxable year or years to which the request for relief relates; and

(7) whether the requesting spouse was in poor mental or physical health at the time the returns were filed or at the time she requested relief.

As Rev. Proc. 2013-34, sec. 4.03, makes clear, no single factor is to be determinative in any particular case, all factors are to be considered and weighed appropriately, and the list of factors is not intended to be exhaustive. Arobo v. Commissioner, T.C. Memo. 2016-66, at *14-*15. In evaluating a claim for relief, no one factor or a majority of factors necessarily determines the outcome. Wang v. Commissioner, T.C. Memo. 2014-206, at *28; Rev. Proc. 2013-34, sec. 4.03(2). The degree of importance of each factor varies depending on the requesting spouse's facts and circumstances. Williams v. Commissioner, T.C. Memo. 2015-198, at *4; Rev. Proc. 2013-34, sec. 4.03(2).

"If the requesting spouse is no longer married to the non-requesting spouse, this factor will weigh in favor of relief." Rev. Proc. 2013-34, sec. 4.03(2)(a). Petitioner and Mr. Swanson have been divorced since December 2011. The first factor weighs in favor of relief.

If a requesting spouse will suffer economic hardship if relief is not granted, then the second factor weighs in the requesting spouse's favor. Id. sec. 4.03(2)(b), 2013-43 I.R.B. at 401. Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living

expenses. Butner v. Commissioner, T.C. Memo. 2007-136. The facts and circumstances considered in this inquiry include: (1) the requesting spouse's age, employment status and history, ability to earn, and number of dependents; (2) the amount reasonably necessary for food, clothing, housing, medical expenses, transportation, and current tax payments; (3) any extraordinary circumstances such as special education expenses, a medical catastrophe, or a natural disaster; and (4) any other factor bearing on economic hardship. Sec. 301.6343-1(b)(4), Proced. & Admin. Regs. In addition, the Commissioner considers the requesting spouse's current income (including how the requesting spouse's income compares to Federal poverty guidelines) and assets in relation to her expenses. Rev. Proc. 2013-34, sec. 4.03(2)(b). This factor weighs in favor of equitable relief when the requesting spouse's income falls below 250% of the Federal poverty guidelines unless the requesting spouse has other assets that might be used to make payments toward the tax liability while still meeting the requesting spouse's reasonable basic living expenses. Id. While it is possible that her income is at or below the guidelines (between her wages from Total Automotive, Inc., and the limited spousal maintenance she received for 2015), petitioner failed to provide evidence of her share of living expenses and did not explain why she could not sell some of her assets to pay the liabilities. Because petitioner has failed to demonstrate that

she will suffer economic hardship if relief is not granted, the second factor is neutral.

If the requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the income tax liability then the third factor weighs against the granting of equitable relief from joint and several liability. Id. sec. 4.03(2)(c)(ii). For the third factor, even if the requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the tax due, this factor will weigh in favor of relief if the requesting spouse was abused by the nonrequesting spouse or if the nonrequesting spouse maintained control of the household finances by restricting the requesting spouse's access to financial information, and because of the abuse or financial control, the requesting spouse was not able to question the payment of the tax reported as due on the return or challenge the nonrequesting spouse's assurance regarding the payment of the tax. Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii), (iv), 2013-43 I.R.B. at 401-402. As discussed above, we find that petitioner had reason to know of the unpaid liabilities and reason to know that the liabilities would not be paid. In addition, as discussed above, Mr. Swanson's conduct did not impair her access to information about the family finances or these returns. The third factor weighs against relief.

If the nonrequesting spouse has a legal obligation to pay the tax liability, then the fourth factor weighs in favor of granting relief. Id. sec. 4.03(2)(d). After respondent denied her request for relief from joint and several liability and after she petitioned this Court, petitioner and Mr. Swanson signed a spousal maintenance modification agreement in which Mr. Swanson agreed to pay the tax liabilities stemming from the underpayment of tax for 2007 and 2008. Because Mr. Swanson has a legal obligation to pay the tax liabilities the fourth factor weighs in favor of relief.

The fifth factor weighs against relief if the requesting spouse "significantly benefitted from the unpaid income tax liability or understatement." Id. sec. 4.03(2)(e). Further, if the amount of the unpaid tax was small and did not provide a benefit to either spouse, the revenue procedure states that this factor is neutral. Id. However, this Court has held that this factor weighs in favor of relief if the requesting spouse received little or no benefit. Hollimon v. Commissioner, T.C. Memo. 2015-157, at *14.

Petitioner argues that neither spouse received a significant benefit from the underpayments of tax. The amounts of unpaid tax, including additions to tax, total over $13,000 for the two years. Petitioner argues that relative to the household income for 2007 and 2008, the total of the underpayments was insignificant

because it was less than 4% of the household income over the two years. While the total of the unpaid tax liabilities was small relative to the total household income and may not have contributed to a lavish lifestyle, petitioner and Mr. Swanson took vacations to both Mexico and Florida, and she was aware of their financial difficulties. Compare Doyle v. Commissioner, T.C. Memo. 2003-96, 2003 WL 1785886, at *5 (holding that the taxpayer significantly benefited from the unpaid liability where she took two European vacations, transferred money to her children, and paid normal living expenses), aff'd, 94 F. App'x 949 (3d Cir. 2004), with Wiener v. Commissioner, T.C. Memo. 2008-230 (holding that the taxpayer did not receive a significant benefit from the unpaid tax liability where she was not aware of the tax refunds for 20 years and there was no indication that her lifestyle improved after the husband deposited the refunds in his account). We conclude that the fifth factor weighs against relief.

If the requesting spouse is not in compliance with the income tax laws after being divorced from the nonrequesting spouse, then this factor will weigh against relief. Rev. Proc. 2013-34, sec. 4.03(2)(f)(i). Because petitioner conceded, by stipulation, that she has not filed an accurate tax return for 2011, 2012, 2013 or 2014, the sixth factor weighs against relief.

The seventh "factor will weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the return or returns for which the request for relief relates were filed * * *, or at the time the requesting spouse requested relief." Id. sec. 4.03(2)(g), 2013-43 I.R.B. at 403. "The Service will consider, the nature, extent, and duration of the condition, including the ongoing economic impact of the illness." Id. Petitioner argues that she is suffering from mental health problems because of emotional and psychological abuse by Mr. Swanson and that this factor should weigh in favor of relief. We do not underestimate the difficulties caused by Mr. Swanson's alcohol abuse and threats of suicide, and we accept petitioner's testimony that she is seeing a psychologist. However, we found petitioner's testimony insufficient to support a conclusion that she was in poor mental or physical health at the time the joint Forms 1040 for the years at issue were filed, at the time she requested section 6015 relief, or at the time of trial. See Pullins v. Commissioner, 136 T.C. at 454; Wang v. Commissioner, at *43 (holding that the mental or physical health factor was neutral despite the taxpayer's assertion that she was suffering mental health problems due to alleged mental and psychological abuse by the intervenor, because the taxpayer failed to provide supporting evidence that she was suffering from any mental or physical health problems and only provided self-serving,

uncorroborated statements); <u>Thomassen v. Commissioner</u>, T.C. Memo. 2011-88, 2011 WL 1518446, at \*15 (holding that even though the taxpayer established that she was psychologically abused by the intervenor sufficiently to make her reluctant to challenge the treatment of items on their joint returns for fear of the abuse, she still did not provide sufficient evidence that she was suffering from a significant mental or physical health problem at the time she signed the joint returns), <u>aff'd</u>, 564 F. App'x 885 (9th Cir. 2004); <u>Banderas v. Commissioner</u>, 2007 WL 1484504, at \*12 (holding that the poor mental and physical health factor was neutral despite the taxpayer's general assertions of health problems because the taxpayer did not submit any corroborating medical documentation or any specific contentions regarding how such ailments might have affected her ability to met her Federal tax obligations and finding that there were no particular health problems of a nature that would affect the balancing of her claim for relief). We therefore find the seventh factor neutral.

We find the facts that petitioner and Mr. Swanson are divorced and that Mr. Swanson has a legal obligation to pay the tax liabilities at issue weigh in favor of relief while the facts that petitioner had reason to know that the tax liabilities would not be paid, that she received some benefit from the unpaid tax liabilities,

and that she has not filed accurate returns after her divorce weigh against the granting of relief. We find that all other factors are neutral.

Weighing the entire record before us, including all of the facts and circumstances presented by petitioner, we conclude that petitioner has not established that she qualifies for relief from joint and several liability under section 6015(f).

The Court has considered all of the parties' contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.